SAMUEL H. CHUTE and another *vs.* WILLIAM D. WASHBURN and another.

September 23, 1890.

Conveyance — Concurrent Contract — Construction.—Plaintiffs in due form conveyed a tract of land to the defendant W., who was then the president of the other defendant, a railway corporation. As part of the same transaction, W. acknowledged, in writing, under seal, that he held the land in trust for the corporation, to be used for certain purposes; and in the same writing contracted with the plaintiffs that he would reconvey the land to them if the corporation did not, within three years, take, use, and occupy the same, in whole or in part, for terminal purposes. The corporation was cognizant of the conveyance and contract, and assented to them. *Held* that, as between the parties, the deed and the concurrent contract must be considered and treated as one instrument.

Same — Trust — Condition Subsequent.—The fee to the land vested on delivery of the deed in W., in trust, subject to divestiture should there be a failure to comply with the condition specified, which was a condition subsequent, not precedent.

Same — Breach of Condition — Equitable Remedy.—A court of equity will not lend its *aid* to divest an estate for the breach of a condition subsequent.

Same — Performance of Condition — Evidence.—Testimony in the case examined, and *held* sufficient to sustain a finding of the trial court that the defendant corporation had fulfilled in accordance with the terms of the contract, and had complied with the conditions imposed therein.

Same—Evidence—Acts of Performance.—The acts of the corporation in relation to the construction of its road and the establishment of its termi-

nals, both before and after the expiration of the period prescribed, were admissible in evidence for the purpose of showing that it performed certain acts of use and occupation of the premises involved in good faith and with an honest motive.

Action brought in the district court for Hennepin county against the defendants. Washburn and the Minneapolis, Sault Ste. Marie & Atlantic Ry. Co., to compel a reconveyance by the former of the land mentioned in the opinion. Trial before *Lochren, Hicks*, and *Rea, JJ.*, and judgment ordered and entered for defendants, from which the plaintiffs appeal.

*Howell W. Young* and *John M. Miller*, for appellants.

*Koon, Whelan & Bennett*, for respondents.

COLLINS, J. In the year 1883, and by the same persons, substantially, there were organized, in the respective states of Minnesota, Michigan, and Wisconsin, three distinct corporations, the object of those interested being to build that railway line now known as the "Soo System," extending from Minneapolis to Sault Ste. Marie. The Minnesota corporation was named the "Minneapolis & St. Croix Ry.;" that organized in Michigan, the "Menominee & Sault Ste. Marie Ry.;" and that in Wisconsin, one of the defendants herein, the "Minneapolis, Sault Ste. Marie & Atlantic Ry." The defendant Washburn was the president of this last-named road, and was largely interested in the others. On November 27, 1883, plaintiffs were the owners in fee of the land first described in the complaint in this action, 160 acres situated near the city of Minneapolis. On that day they entered into a verbal agreement with defendant Washburn, whereby they agreed to donate to him, in trust for the defendant railway company, one certain 40-acre tract out of the 160, upon certain conditions. Pursuant to their agreement, the plaintiffs, on the day last named, made and delivered to defendant Washburn a warranty deed of the 40 acres, and the latter at the same time executed, under seal, and delivered to the plaintiffs, the written obligation or contract known in these proceedings as "Exhibit A." This writing was an acknowledgment by Washburn that he had received a conveyance of the 40 acres for the use of the railway company "as terminal grounds, for shops, yards, tracks, and other terminal facilities,

together with other grounds so conveyed and held by said Washburn, and that said Washburn holds the title to the same in trust for said railway company, to be taken, occupied, and used by said railway company for some or all of said purposes. And it is hereby covenanted and agreed that, if the said land first herein described shall not within three years from the date of said deed be so taken, occupied, and used by said railway company, in whole or in part, for such terminal purposes, then said William D. Washburn will, upon demand of said Samuel H. Chute and Richard Chute, reconvey, by good and sufficient deed, said land to them, the said Samuel H. Chute and Richard Chute; and this agreement shall be binding upon the respective heirs, executors, administrators, successors, and assigns of all the parties in interest herein." September 25, 1884, the defendant corporation duly assented to the trust created by the writings before mentioned, by formally resolving to accept the conveyance for its benefit, subject to the terms and conditions expressed in the contract executed by Mr. Washburn, and did further resolve that the latter should make and deliver to it a written declaration of the trust and of the terms and conditions upon which he obtained and held the title to the land in question. In the month of December, 1886, the plaintiffs demanded of Mr. Washburn that he reconvey the property to them, upon the ground that none of the conditions impressed upon the trust by his written obligation had been complied with, and that therefore they were entitled to a deed. This was refused; hence this action, which was brought to reinvest the plaintiffs with title to the 40 acres, on which, and upon the land contiguous, mentioned in the Washburn obligation, the defendant corporation had, prior to the trial of this action, in July, 1887, placed valuable improvements, of the precise character required of it by the writing. Among other findings of fact made and filed August 15, 1889, by the trial court was one which goes directly to the merits of the controversy, as follows: "That prior to the 27th day of November, 1886, the defendant railway company did take, use, and occupy a part of the land so conveyed by plaintiffs to the defendant Washburn, and there constructed a railway track upon a part of such land for terminal purposes; and that, ever since the date last aforesaid, the de-

fendant railway company has continuously had actual possession of a part or all of the land so conveyed by the plaintiffs to the defendant Washburn, as aforesaid, and has used said land for shops, yards, railway tracks, and other terminal facilities of the said railway company."

Judgment having been ordered and entered on these findings in defendants' favor, plaintiffs' appeal is from the judgment. The first nine assignments of error go to the admission of certain testimony against plaintiffs' objections, and will be disposed of together, and in a very brief manner, later on. The assignments of error numbered 10 and 11 are, in effect, that the finding of fact, heretofore quoted in full, was not sustained by the evidence. Upon a careful examination of the testimony upon which this finding must have been predicated, we are of the opinion that it cannot be disturbed. There was evidence introduced upon the trial reasonably tending to support the conclusion of the trial court, and nothing more is required.

Taking the deed in which the plaintiffs were grantors and the concurrent obligation or contract executed by Mr. Washburn as one instrument, (and, as between these parties, they must be construed as one instrument,) Washburn, the grantee named in the deed, took the title in fee, in trust, but upon condition. The fee vested at once, subject to divestiture should there be a failure to perform the acts and to comply with the condition specified; and this was a condition subsequent, not a condition precedent. It is well settled that if the act required does not necessarily precede the vesting of the estate, but may accompany or follow it, and if the act may as well be done after as before the vesting of the estate, or if, from the nature of the act to be performed and the time required for its performance, it is evidently the intention of the parties that the estate shall vest and the grantee perform the act after taking possession, then the condition is subsequent. 2 Washb. Real Prop. 7, and authorities cited. It is very clear that the condition imposed by the plaintiffs was to be complied with, and the acts required of the beneficiary would, of necessity, have to be performed, after it took possession of the land. It is hardly necessary to add that conditions subsequent are not

favored in law, and are construed strictly, because they tend to destroy estates, and the vigorous exaction of them is a species *summum jus*, and in many cases hardly reconcilable with conscience. A court of equity will never lend its *aid* to divest an estate for the breach of a condition subsequent. 4 Kent, Comm. 130.

The contract made by Washburn with plaintiffs, under which they now seek to recover the land, is quite vague and uncertain in its terms. It expressly provides, however, that the donated 40 acres shall be used in connection with lands adjoining for terminal purposes, for shops, yards, and tracks. The value, size, and capacity of the contemplated shops, yards, and tracks, to what extent the ground shall be finally occupied, or the period of time within which the proposed terminal facilities shall be fully completed, are not specified. There was no requirement that the road itself should be wholly or even partially constructed within three years from date. It is evident that the terminals of a line of railway, the ground at its extremities needed for a variety of purposes, and among others for receiving, storing, and expeditiously handling its supplies and building material, can be taken, used, and occupied to advantage for such purposes before the road is built; in fact, such use and occupation might naturally precede the construction.

The testimony in the case at bar tends to show that, long before the expiration of the three years mentioned in the contract, the defendant corporation had commenced the construction of its line of road at the most convenient point in the state of Wisconsin, building westerly in the direction of Minneapolis. In the spring of 1886 it consolidated with the Michigan company, and also entered into a contract with the Minnesota corporation, whereby it was to aid the latter to build its line of road at once from the western terminus of its own line in Wisconsin to the city of Minneapolis. This same contract also provided for the lease of the Minnesota road, and its purchase within five years, by the defendant corporation. Work on the entire system progressed during the summer of 1886, but early in September of that year it became apparent that the line could not be completed to Minneapolis that season. Mr. Washburn then undertook to secure from these plaintiffs an ex-

tension of time within which to comply with the terms and conditions of his obligation, but was unsuccessful. In October the defendant corporation caused to be built something over one-half mile of railway from the junction of its main line with the Northern Pacific road in East Minneapolis to and upon the land in controversy, and also built and placed thereon a small frame building, since utilized by the company as a railway blacksmith shop. We think, in view of the uncertainty and indefiniteness of the conditions attached to the conveyance as found in the contract, taking into consideration the fact as established by the testimony of the good faith with which the defendant corporation acted throughout, that this evidence was sufficient to warrant the finding attacked by appellants' tenth assignment of error.

Under plaintiffs' objection, the court below permitted defendants to show what was done prior to November 27, 1886, towards completing the three roads now operated as one, and also allowed defendants to show what was done thereafter, and down to the time of the trial. That portion of the eighth finding complained of in the eleventh assignment of error was based upon uncontradicted testimony that, in the spring of 1887, work was resumed and vigorously pushed all along the route; that the track laid in 1886 from the Northern Pacific road on to the premises in dispute, with the exception of a small part used for yard purposes, had been made a part of the main line of defendant's railway, and that, at the time of the trial, a commodious roundhouse, large and expensive shops, and other terminal facilities were nearly finished upon the identical tracts of land mentioned in the writing. The objections to this testimony were properly overruled, and hence the eleventh assignment falls to the ground. Had no steps been taken by the defendant corporation towards building its road prior to the time it laid the track on to the 40 acres and put a building thereon, in the fall of 1886, evidence of the fact would have been admissible if offered by the plaintiffs; and, had nothing further been done up to the time of the trial by the railway company, testimony to that effect would have been competent, and very effective. It would have characterized and stamped the acts of the defendant upon and in reference to this land in the fall of 1886,

just prior to the expiration of the three-years limitation, as having been performed dishonestly and in bad faith. If this be so, it must follow that evidence of the efforts which were being made in the direction of building the different lines of road at and prior to the time when the defendant company went upon the land, graded a part of its main line, put down its track, and built the blacksmith shop, and what it did immediately thereafter and down to the time of the trial, in pursuance of its intention to complete its railway and establish the terminal grounds mentioned in Mr. Washburn's obligation, was proper and pertinent. This class of testimony tended to prove that its use and occupation of the land for some of the purposes demanded, although slight, was in good faith and with an honest motive.

Judgment affirmed.