[Civ. No. 1883.   Third Appellate District.—December 11, 1918.]

E. W. WHITAKER et al., Appellants, v. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA (a Corporation), Respondent.

DEED — CONDITIONS — CONSTRUCTION.—Conditions in deeds are strictly construed against the grantor with a view of preserving the estate granted, and evidence of violation of the conditions must be clear and satisfactory to justify a court in decreeing a reversion of the conveyance.

ID.—DEED OF FOREST LAND TO UNIVERSITY—CONDITION—DEVOTION TO FORESTRY INVESTIGATION—TIME FOR BEGINNING OF WORK—SILENCE OF CONVEYANCE—REASONABLE TIME.—Where a deed of forest land is made to a university upon the condition that the land shall be devoted to forestry investigation and research, connected with that branch of instruction as it is taught in the institution, and no time is provided in the deed for the beginning of the work, a reasonable time is to be allowed.

ID.—PROHIBITION OF USE OF LAND FOR STOCK RANGE—UNAUTHORIZED ENTRY OF FEW CATTLE.—A condition in such a deed that the land shall not be used for a stock range, but campers may keep thereon the necessary stock for their camping purposes, is not violated by the unauthorized entry of a few cattle at various times.

ID. — LACK OF KNOWLEDGE OF STRAYING CATTLE.—In determining whether the condition prohibiting the use of the land for a stock range was violated, the circumstance that the grantee had no knowledge of the cattle straying upon the land and that no damage was caused thereby, should be considered.

ID.—NAMING PREMISES—COMPLIANCE WITH CONDITION.—A condition in such a deed that the lands and premises shall be known and called "Whitaker's Forest," without any attempt of specification as to

what should be done to carry out such condition, is sufficiently complied with by giving notice of the gift in the university publications under the heading of "Whitaker's Forest."

APPEAL from a judgment of the Superior Court of Tulare County.   W. B. Wallace, Judge.   Affirmed.

The facts are stated in the opinion of the court.

J. C. Needham and Joel W. West for Appellant.

Lamberson, Burke & Lamberson for Respondent.

BURNETT, J.—On July 26, 1910, one Horace Whitaker executed a deed without money consideration to respondent herein of three hundred and twenty acres of forest land in Tulare County.   The granting part was in the usual form of a deed absolute, but it was followed by this language: "This deed is expressly made subject to the following reservation hereinafter set forth, and upon the failure of said party to do and perform and carry out the purposes and intents for which the real property herein described is conveyed or in case of any violation of the reservations herein made, said property herein shall immediately revert to said party of the first part, his heirs, executors, administrators or assigns.   Reservations: 1. Said party of the second part shall have and hold said lands and premises in its present condition for forestry investigation and research connected with that branch of instruction as taught in the University of California, and that it be preserved and continued as a park and pleasure resort for the people of the state of California. 2. That no whisky or other intoxicating liquors shall ever be sold or dispensed on said premises. 3. That said land and premises shall be used as a public park for campers and that no charge shall be made or collected from any person who uses the same for camping purposes, but regulations may be made governing persons while camped on said premises. 4. That said land shall not be used for a stock range, but campers may keep thereon the necessary stock for their camping purposes. 5. That no Sequoia or Redwood trees growing or that may grow on said premises shall be felled or cut down. 6. That said party reserves the right as long as he shall live, to cut, use and remove from said prem-

ises any and all dead or fallen timber. 7. These lands and premises shall be known as and called 'Whitaker's Forest.' "

Horace Whitaker died a few months after the execution of the deed and this action was brought by his heirs at law to enforce a forfeiture of the conveyance and to obtain a decree of reversion of title to them. The complaint was in three counts, the first of which alleged the failure of the grantee to comply with the conditions of the deed; the second charged statutory fraud in that defendant accepted the deed without any intention to perform the conditions therein, and upon the false representations that it would perform said conditions; the third charged the grantor with mental incompetency at the time of the execution of the deed, but this last count was abandoned at the trial.

It is not disputed that the deed constituted a conditional conveyance and that the estate was subject to forfeiture for failure to comply with the conditions or "reservations" as they are denominated in the instrument.

It may be further observed that a forfeiture is not favored, that such conditions are strictly construed against the grantor with a view of preserving the estate granted, and that the evidence of violation of the conditions must be clear and satisfactory to justify a court in decreeing a reversion of the conveyance. (Civ. Code, sec. 1442; *Randall* v. *Scott*, 110 Cal. 590, [42 Pac. 976]; *Behlow* v. *Southern Pacific R. R. Co.*, 130 Cal. 16, [62 Pac. 295]; *Reclamation District* v. *Van Loben Sels*, 145 Cal. 181, [78 Pac. 638].)

No doubt the lower court was familiar with these precepts of the law, and it is at least debatable whether their proper application would not have demanded a judgment for the defendant if the case had rested entirely upon the evidence offered for plaintiff. In view of the whole record, however, we are satisfied that no legal ground exists for our interference with the conclusion of the trial judge.

We cannot say that there was any failure to devote the land to the purpose of forestry investigation and research. There was some delay in carrying out this provision of the deed. The delay, however, was not unreasonable. It must be presumed that the grantor contemplated that time would be required for preparation to accomplish the purpose that he had in view, since he prescribed no limit for the beginning of the work. It is manifest that he left this matter to the wise

discretion of the university authorities, and they seem to have acted in good faith in their efforts to execute the trust. When the deed was made there was no department of forestry connected with the university and instruction in that branch was not given. At the first meeting of the regents for planning and providing for the next year's activities, after the delivery of the deed, an appropriation of six thousand five hundred dollars was made for such department, and this authorized the president of the university to establish it. He promptly began a search for a suitable man to take charge of the forestry department. He did not succeed until December, 1913, when Professor Walter Mulford of Cornell University was appointed. The latter, however, could not leave his work at Cornell until August, 1914. But before his appointment he had visited California on the invitation of the university authorities, and the advantages of Whitaker's Forest for forestry investigation and research were pointed out to him by Mr. Henderson, secretary for the regents, as a special reason why he should take charge of the work. We need not detail the various steps taken. It is sufficient to say that the department was established under the direction of Professor Mulford, who was assisted by several other professors. The land was visited and examined, plans for investigation and research were adopted, scientific instruments and equipment were purchased, and allowance in the university budget for forestry was made for the years 1911–12, 1913–14, 1914–15 and 1915–16. It is true that the actual work of forestry investigation and research was not begun until after this suit was brought, but the preparation had to be made, and it cannot be said that anyone was to blame for the delay, or that said delay is a sufficient reason for forfeiture of the estate. In the absence of any specification in the deed as to the time when work should be begun, a reasonable time would be allowed, and it cannot be held that this principle was disregarded. (*Brown* v. *State,* 5 Colo. 496; *Lawrey* v. *Hanna,* 59 Or. 60, [115 Pac. 975]; 2 Washburn on Real Property, 11.)

There is no claim of any violation of the second condition in relation to intoxicating liquors, nor is there a particle of evidence that effect was not given to the third provision in reference to the use of the land as a public park for campers. Since no evidence was offered on this subject, the burden being upon appellants, the finding in reference thereto was properly

in favor of respondent. (Code Civ. Proc., sec. 1981; *Estate of Latour*, 140 Cal. 414, [73 Pac. 1070, 74 Pac. 441].)

One of the main points urged by appellants is that there was a violation of the fourth condition as to the cattle range. The only evidence offered as to this contention is found in the testimony of three or four witnesses who pastured their cattle in the United States Forest Reserve surrounding the land in question, and who declared that, at various times, they had seen a few head of them on the Whitaker property, but there is nothing to show that anyone ever turned his cattle on the premises or that respondent permitted or even knew or heard of cattle thus straying on the land. The evidence falls entirely short of proving that the land has been "used for a stock range." As respondent points out, the verb "to use" means to employ; to put to a purpose; to employ for the attainment of some purpose or end; to avail one's self of. (39 Cyc. 846.)

It seems quite unreasonable to contend that the unauthorized entry of a few cattle at various times on the land in question would constitute the employment or use of such land for a stock range. Indeed, the language of the condition implies the voluntary act of the grantee in devoting the land to the purpose of a stock range. Nothing of the kind is disclosed by the evidence. Uncertain and inadequate as was the testimony for plaintiffs, its significance was impaired by the testimony of Professor Walter Mulford, head of the department of forestry of the University of California, who testified that he made an examination of the land in June, 1915, and he saw no cattle there and no evidence of any damage that would be caused if cattle ranged the property. The only signs of cattle, he said, were along the public road running through the land.

The circumstance that defendant had no knowledge of the cattle straying upon the land and that no damage was caused thereby, should be considered in determining whether said covenant was violated. (*Indian Orchard Canal Co.* v. *Sikes*, 8 Gray (Mass.), 562; *Collins Manufacturing Co.* v. *Marcy*, 25 Conn. 242; *Barrie* v. *Smith*, 47 Mich. 130, [10 N. W. 168].)

The grantor, of course, might have required the land to be inclosed so as to exclude estrays, but he did not see fit to do so, and we are not to accord to the condition a narrower meaning than the language plainly imports.

In the preliminary correspondence between the parties the grantor intimated that this condition would be more exacting,

but we are to determine his intention solely by the language of the deed, since it is complete in itself and does not admit of extraneous evidence.

The only other condition of which violation is claimed is the last: "These lands and premises shall be known and called Whitaker's Forest." It is apparent that this requirement is very general in its terms. There was no attempt made to specify by whom and to what extent the land was to be so known and called. No explicit duty was thereby cast upon respondent, nor was it pointed out how the memorial of the name was to be created or preserved. The donor's desire to have his generosity fittingly recognized was not unnatural, and his pardonable ambition for this sort of posthumous fame should not go unrewarded, but since he was silent as to what should be done by the grantee to accomplish this purpose, it must be assumed that he intended to leave to its discretion the particular method or means of satisfying this condition. It might have been well if the regents had passed a resolution reciting that the premises should be known and called "Whitaker's Forest," and if they had caused a suitable sign designating the land by that name to be placed at the entrance to the forest. But we cannot hold that this was required. They adopted a formal order and spread the same upon their minutes accepting the conveyance subject to the conditions. They gave notice to the world of the gift by publication in the "University Chronicle," the official news bulletin of the university. The article was headed in capital letters, "Whitaker's Forest," and the deed was published in full. In making his first biennial report to the Governor after the gift was made, the president of the university specifically referred to the land as Whitaker's Forest, and the deed was set forth in full with the statement that the gift was subject to the conditions therein named. It may be added that there is no evidence that it has been known as or called by any other name, and to hold with appellant that something else should have been done by the regents to advertise the gift would be to read into the condition something that is not found therein. It may not be amiss to say that the probabilities are that as this department of the university grows in importance there will be increased recognition of this forest, and there will be more frequent and general advertisement through the University publications of

this munificent gift of ''Whitaker's Forest.'' We also venture the suggestion that it is not too late for the regents to place in the park some suitable monument or inscription to commemorate the name and gift, if such action would be pleasing to the heirs. But as before indicated, this step was and is not required, since the donor failed to so specify.

As to the second count of the complaint, it is sufficient to say that there was no substantial evidence to support it. It would be a gross misconception of the record to hold that the grantee had no intention of carrying out the terms of the grant or that it made any false representations to the grantor, which induced the execution of the deed. There was some correspondence between the attorneys of the parties and a desire manifested on the part of the regents to have the gift burdened as little as possible with onerous conditions and to have the university spared unnecessary expense, but there is nothing to show that the regents did not act in the utmost good faith, or that they have failed at any time to appreciate the generosity of the donor, or to do what they deemed necessary to effectuate the intentions of Mr. Whitaker.

The evidence as to what was done by the regents negatives any implication of evil motive and fully supports the finding of the court in that respect. In showing their conduct, it was proper, as contended by respondent, to describe what was done after the complaint was filed and before trial and what was in progress at the time of the trial, which was in furtherance of plans that had been matured and formulated before the action was brought. It had relevant connection with the good faith and diligence of the regents in administering the trust. (13 Cyc. 697; *Chute* v. *Washburn,* 44 Minn. 312, [46 N. W. 555].)

It seems unnecessary to notice specifically the cases cited by appellants which enunciate well-established principles of law in reference to such deeds, as they are manifestly not opposed to the views herein expressed.

In conclusion, it may be proper to remember that this gift was for a public purpose, and it should be regarded with even greater consideration than if the grant were for the use and benefit of a certain individual. But even if the regents had a personal interest in the benefaction, we should be constrained to hold that the evidence is ample to support the findings of the court.

It was the intention of the grantor that the land should be preserved for all time for the use of the people of the state, subject to the conditions enumerated in the deed, and we are satisfied that the lower court's decision was in consonance with that intention.

The judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.