[Civ. No. 15171. Second Dist., Div. Three. July 17, 1946.]

CITY OF PALOS VERDES ESTATES, Respondent, v. OSCAR L. WILLETT et al., Defendants; BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION (a National Banking Association), Appellant.

Benjamin S. Crow for Appellant.

Donald Armstrong for Respondent.

SHINN, J.—Plaintiff had judgment against Bank of America National Trust and Savings Association, as trustee, and others, quieting title to Lot N, Tract 6885, in the county of Los Angeles. Said tract is a part of a residential community known as Palos Verdes Estates, comprising more than 3,000 acres, or 5,400 lots, located in the hills adjoining the coast line between the cities of Redondo Beach and San Pedro. Lot N is a parcel 180 feet by 161 feet by 171 feet, containing some 15,000 square feet.

Defendant banking association holds title, as successor trustee, to the unsold land, under a subdivision trust of the entire property, executed in 1923. Extensive sales of the subdivided lands have been made and a large residential community has been developed. Under the subdivision plan many hundreds of acres were set apart for park and recreation uses, were landscaped and improved as such and so delineated upon maps which were used in the sale of the property. Lot N was so designated and improved and thenceforth has been a part of the park and recreation system and considered and used as such. Since 1923, or thereabouts, to the present time, a small building located on the property has been continuously used as a sales office by the selling force operating under the trust indenture in making original sales and resales. On June 4, 1936, Lot N and other parcels of land were conveyed by the trustee, without consideration, to Palos Verdes Homes Association, a nonprofit corporation, and on the same day a written agreement was entered into between the grantor and the grantee. It may be noted here that Palos Verdes Homes Association plays an important part in the development and management of the project and has the power under the trust indenture to levy assessments on the real property of Palos Verdes Estates, with certain exceptions, and to collect and to expend the same for many purposes, including the lighting, improvement and maintenance of streets, construction of sewer and storm water drains, and the purchase and operation of water systems; to keep all lots and plots in good

order and condition; to issue building permits, inspect buildings and, generally, to do whatever may be "for the peace, health, comfort, safety and general welfare of the lot owners" etc. In brief, it functions for the public benefit and in aid of the trusteeship.

By the terms of the deed and of the agreement of June 4th, the several parcels were transferred to and accepted by the Homes Association to be maintained and used exclusively for park and recreation purposes. On the 10th day of April, 1942, the Homes Association conveyed to the city of Palos Verdes Estates, a city of the sixth class, 13 of said parcels, including Lot N, the deed reciting, "This conveyance is made pursuant to the permission contained in certain deeds to this Association to convey said property to a park commission or other body suitably constituted by law to take over, maintain and regulate public parks, the grantee City, as a city of the sixth class, being suitably constituted so to do." The deed bore the written approval of the Park and Recreation Board of Palos Verdes Homes Association. The trustee continued to use the building as headquarters for its sales force and it appears that some use was also made of it for meetings of the Homes Association. For some unexplained reason, a controversy arose respecting the use of the building by the trustee, which apparently also involved a disagreement as to responsibility for care of the premises. All parties concede that the land must and will be devoted to public use for park and recreation purposes, and it is not contended that it has been used for any other purpose, except that of a sales headquarters.

The plaintiff is now contending that the trustee, in conveying the property to the Homes Association, gave up its right to maintain thereon its sales headquarters. The trustee has retaliated by disputing the title of the city, and seeks to have the court decree a reconveyance of the property to itself as trustee. It also claims that, in any event, in its deed to the Homes Association it reserved the right to continue to use the property, as it had been used in the past, as headquarters for its sales organization and the transaction of incidental business in connection with the administration of the trust.

While it would appear, from the conflicting claims upon the land, that the interests of the parties are antagonistic, such in reality is not the case. They are mutually interested in having the property maintained and used for the benefit and

advantage of the owners of property in Palos Verdes Estates and their difficulties have arisen over a disagreement as to the use and care of the land which would best serve the public interest. We may as well state our conclusions at this point as to the legal rights of the city and the trustee. They are that Lot N belongs to plaintiff as a part of the city's park system, but that the trustee has the right to maintain its sales office in the building on the lot during the lifetime of the trust. Reasons for these conclusions are found in the terms of the trust indenture and, fortunately, without our having to delve too deeply into the intricacies of its 162 printed pages.

We may consider first the matter of the trustee's claim of the right to maintain and use a sales office on the lot. The general powers and duties of the original trustee to improve, subdivide, and sell the trust property, and to do any and all things which in its judgment might be necessary or expedient in the performance of its manifold duties, undoubtedly gave it the right, which was exercised when the trustor and the original trustee were the only interested parties, to establish and maintain sales headquarters. It is scarcely necessary to observe that it has been and still is important, in the promotion and management of the project and the sale of its some 5,400 lots, to have sales headquarters located upon the land, which is far removed from all other centers of business activity. The trustee had title to Lot N and was in possession of the building thereon at all times before and after the conveyance to the Homes Association. The deed to the association was made and accepted subject to "each and every provision, condition, restriction, reservation, lien, charge, easement and covenant" contained in the original basic protective restrictions which had been imposed upon the property, and certain other restrictions imposed by subsequent dedications, all of which were identified in the deed by references to books and pages where the same were recorded in the office of the county recorder. Amendment No. 3 to Declaration No. 5, which was an instrument executed by the trustee and placed of record in June of 1924, within powers specifically granted to it by the trust indenture to restrict the property, contained the following: "The following clause is hereby added to paragraph G of Section 1: Provided, that the power and right is specifically reserved to Bank of America, its successors and assigns, to construct and maintain a real estate office on Lot N." In December, 1935, the trus-

tee replied to a request of the Homes Association for a deed to some 32 parcels of land, including Lot N, and mentioned this lot as follows: ''Since this parcel is now occupied by the sales office and it is the intention to continue its use for that purpose, we prefer to retain title until it is no longer required for sales purposes, at which time it will be conveyed to you.'' So far as shown by the record, this letter remained unanswered. The deed given thereafter was made subject to the reserved right to use the lot for sales headquarters, by reference to reservations appearing of record, and it clearly appears from the conduct of the parties, then and thereafter, that there was no misunderstanding, when the deed was given, as to the purpose or efficacy of the reservation. We conclude that the trustee has not parted with its right to maintain sales headquarters on Lot N for such time as the same, in its judgment, may be necessary or expedient for the proper exercise of its powers and the performance of its duties as trustee.

The trustee in its answer alleged that its deed to the Homes Association was made without the written consent of the trustor, and contended that for that reason it was void. Plaintiff answers that such written consent was unnecessary and also contends that the evidence was insufficient to prove that the trustor had not given consent. ■ Under section 6 of article III of the indenture, the trustee was authorized ''by and with the consent and approval of the first party (trustor), first had in writing,'' to ''A. Make donation or dedication of, or reserve, set aside, segregate or lease any part of the trust property, or any of the trust funds derived from subscriptions, for any of the following purposes: (1) Public or private parks or recreation places, roads, open ways or spaces for common or general use.'' Paragraph G of section 6 reads: ''. . . Whenever donations or conveyances shall be made without consideration for any of the purposes named in this section, the deeds shall, unless the Trustee deem it inadvisable, contain by way of condition subsequent a limitation of the use of such property to the purpose for which it was granted.'' The indenture further provided, in article III: ''Section 11. During the entire continuance and operation of this trust the Trustee shall have full power to do any and all of the following things which may, in its judgment, be necessary or expedient, and to do the same in such manner and at such time as to the Trustee may seem best: . . .

"G. Execute deeds for any lot, parcel, part, strip, right of way, or portion of the said lands which may be necessary, convenient or required to settle, or adjust, any dispute or controversy with respect to boundary lines of the trust real property, or in order to convey, authorized donations of parcels, or parcels necessary or proper for public dedications of highways or other places, or for common or private uses, or for any other purpose authorized or permitted by the provisions of this trust indenture. . . .

"I. Retain in its own name (but segregated from the general trust assets in such manner as it shall adopt) or, as provided in this trust indenture, convey to Palos Verdes Homes Association, or other organization or trusteeship exercising the functions of said Association, or to a public authority, such trust property, including reversionary rights, as may in its judgment be necessary or expedient to effectuate the purposes and objects of this trust. . . ."

No finding was made that the trustor had or had not given written consent to the conveyance in question, nor do we find in the record any ruling evidencing the court's conclusion as to whether such consent was required under the trust indenture. Mr. Jay Lawyer, the original trustor, testified that he had not given written or oral consent to the conveyance of Lot N to the Homes Association dated June 4, 1936. It must be assumed, in support of the judgment and the general findings, that the court resolved the question of fact against the contention of the trustee and believed Mr. Lawyer to have been mistaken. His testimony, read as a whole, was less positive than the "no" which was his reply to the question whether he had given his consent to the deed in question, and is devoid of any suggested reason for his recalling that consent was not given. He did not testify that he had no knowledge of the making of the deed or that he would have refused his consent if it had been requested. The trial court, without questioning in the slightest Mr. Lawyer's entire sincerity, could well have considered the proof of nonconsent to be unsatisfactory. The development of the Palos Verdes community was a huge project, involving multifarious transactions and an enormous amount of detail. No witness other than Mr. Lawyer gave testimony as to whether Mr. Lawyer's consent had been given, there was no evidence that a search had been made of the trustee's records to ascertain whether the files contained such written consent, and

there was no evidence that any files or records were kept which contained the written consents that had been given by the trustor, or any notations with reference thereto. In fact, the record on appeal does not disclose that Mr. Lawyer, or any trustor who succeeded him, had ever been requested to execute, or had executed, a consent in writing to the transfer by the trustee to the Homes Association of any of the many parcels of land that were conveyed to the association for park and recreation purposes. The trial court upon this evidence was not required to find that Mr. Lawyer did not give written consent to the conveyance of Lot N, and the implied finding that consent was given is sustained.

Paragraph 13 of the findings reads as follows: "The court further finds that, by reason of lapse of time, defendants' assertion that the consent of J. Lawyer was necessary to permit the transfer of the property described in plaintiff's complaint to the Palos Verdes Homes Association comes too late. And in that behalf, the court further finds that said claim was asserted by defendants for the first time at the trial of the above entitled cause." Whether this be deemed a determination of a question of fact or only a conclusion of law, it has support in the record. Lot N was only one of numerous parcels, aggregating some 800 acres, which were originally set apart and delineated upon the maps as devoted to public use. With a great many other parcels, Lot N was planted to trees, shrubs and flowers and, according to the testimony, the extensive park system was an important factor in the sale of the property to the public. Upon the maps which were used, the park lands, including Lot N, were marked in green. As early as 1924 the literature used in offering the lands for sale referred to the golf course, a $50,000 club house just opened, and stated: "This property, together with other playgrounds, school sites, parks and the entire coast line and bluffs, comprising in all more than 712 acres, is under the control of Palos Verdes Homes Association." The trustee had legal title to Lot N, but its title was qualified by the right of the property owners to prevent its use for any other than park and recreation purposes. To all intents and purposes it was public property and neither the trustee nor the trustor had any present or future rights which could prevail over the rights of the property owners to have the property maintained for park and recreation purposes to the exclusion of all other purposes, except its use by the

trustee, as heretofore stated. Neither the trustee nor the city seeks in this action to establish in itself a title which will be free from such public use. We are of the opinion that the conduct of the trustor and the original trustee, as described, and the improvement and use of the property for park purposes, were intended to and did constitute a dedication of the lot for such purposes.

Inasmuch as the dedication had taken place 12 or more years before the deed was given to the Homes Association, that conveyance was not a donation or dedication by the trustee within the meaning of section 6 of article III above quoted. It was therefore not a conveyance which required the written consent of the trustor. If the original trustor had not given written approval to the various maps which clearly designated all of the park areas (and there was no evidence that he had not given such approval), his acts and those of the several trustees expressed a consent which could not be recalled or denied. Twenty years was too long a time to wait to question the sufficiency of the dedication. The essentials of dedication by conduct and public use are stated in *Ball* v. *Stephens,* 68 Cal.App.2d 843 [158 P.2d 207], and cases therein cited.

We are further of the opinion that the deed to the Homes Association was a valid conveyance, for the reason that under article III, section 11 [G] the trustee had authority to convey parcels of land which had theretofore been donated and dedicated to use as park property and the conveyance of Lot N therefore did not require any separate or additional consent of the trustor. This construction is further borne out by the general provisions of section 11 [I], article III, quoted above, under which the trustee was empowered to convey property to the Homes Association in order to effectuate the objects and purposes of the trust. We place this construction upon the quoted provisions in the light of the evidence in the record, and because we believe it to be a construction which is supported by the evidence. We refer particularly to the absence of any evidence that the failure to obtain the written consent of the trustor to the transfer was the result of oversight or inadvertence, and to the absence of evidence that it had been the practice at any time to request the trustor's consent for the conveyance to the Homes Association of parcels which had been established, improved, advertised, and represented as park property. In fact, from

the record, the transfer of title to the Homes Association, without requesting the special consent of the trustor, could reasonably have been construed as an expression of the judgment of the trustee that consent of the trustor was unnecessary. This would seem to be a fair interpretation by the trustee of its powers, inasmuch as the trustor had long since surrendered the property to a public use and the holder of the legal title would have the burden of maintaining it. 'It would seem to have been in the interests of the trustor and other beneficiaries of the trust to have that duty assumed by the Homes Association or the city. We conclude that the deed to the Homes Association was executed within the powers of the trustee and was valid.

The trustee sought a decree that the Homes Association and the city have violated a condition subsequent in the deed to the Homes Association, and that by reason thereof title to the property has reverted to the trustee. The deed read in part:

"PROVIDED, HOWEVER, that this conveyance is made and accepted upon each of the following express conditions, provisions, restrictions and covenants hereinafter referred to as the 'conditions', which shall apply to and bind the lessees, grantees, successors and assigns of the respective parties, namely: . . . 3. That the said realty is to be used and administered forever for park and/or recreation purposes, for the benefit of the persons residing or living within the boundaries of the property known as Tracts 4400, 6881, 9302, and 9822, in the County of Los Angeles, State of California, said property being commonly known and referred to as 'Palos Verdes Estates', under such regulations consistent with the other conditions set forth in this deed as may from time to time hereafter be established by the Park and Recreation Board of Palos Verdes Homes Association for the purpose of safeguarding said realty, and any vegetation and/or improvements thereon, from damage or deterioration, and for the further purpose of protecting the residents of said Palos Verdes Estates from any uses of or conditions in or upon the said realty which are, or may be, detrimental to the amenities of the neighborhood; . . . 5. That, except as provided in paragraph 3 hereof, no part of said realty shall be sold or conveyed by Palos Verdes Homes Association except subject to the terms and conditions hereof; provided, however, that said realty, or any portion thereof, may be conveyed by said Palos

Verdes Homes Association, subject to the same conditions as herein contained with respect to the purposes for which said property may be used, to a PARK COMMISSION, or other body suitably constituted by law, to take, hold, maintain and regulate public parks; provided, further, that Palos Verdes Homes Association may dedicate to the public portions of said realty for parkway or street purposes. . . . PROVIDED, that a breach of any of the provisions, conditions, restrictions, reservations, liens, charges and covenants hereinbefore referred to and/or contained herein, including those contained in said Declarations hereinbefore referred to, shall cause said realty to revert to the Grantor herein or its successors in interest, as owner of the reversionary rights herein provided for, and the owner of such reversionary rights shall have the right of immediate re-entry upon said realty in the event of any such breach, and, as to each lot and/or parcel owner of said property or other property described and/or referred to in said Declarations hereinbefore referred to, the said provisions, conditions, restrictions, reservations, liens, charges and covenants shall be covenants running with the land, and the breach of any thereof or the continuance of any such breach may be enjoined, abated or remedied by appropriate proceedings by the Grantor herein, or its successors in interest, or by such other lot or parcel owner, and/or by any other person or corporation designated in said Declarations hereinbefore referred to.'' The provisions aforesaid were stated to be for the benefit of each and every parcel of land in the several tracts named in the deed.

■ It was alleged in the answer of the trustee that on June 20, 1940, the Homes Association completely abandoned the premises and thereafter failed, neglected and refused to maintain the vegetation and plantings on said Lot N, and that the city likewise has failed to maintain said vegetation and plantings or to provide water therefor, and that by reason thereof the lawn dried up and died, the flower beds grew up in weeds, some trees died, and many of the shrubs and plantings were damaged or died and that by reason thereof, on July 19, 1941, the trustee gave notice to the Homes Association that the condition of the deed had thereby been violated and that title had reverted to the trustee. It was further alleged that the trustee thereafter entered upon the property, expended substantial sums in reseeding the lawn, reconditioning the planting on the lot, and that the Homes Association and the city

have not reimbursed nor offered to reimburse the trustee for the expense so incurred. The court found that ever since June 4, 1936, the property has been used for park purposes and no other purposes. It was found that neither the city nor the Homes Association ever abandoned the property and that the trustee did not believe that it had been abandoned, and it was further found, by a general finding, that the allegations of the answer as to the neglect of the planting and its restoration and the expenditure of money therein by the trustee were untrue. The undisputed evidence was that the Homes Association did discontinue irrigation and cultivation of the lawn, flowers, shrubs and trees, and that by reason thereof the lawn, some of the flowers and shrubs, and one or two trees died; that the trustee reseeded the lawn, did some planting, and continued with the irrigation and care thereof. To this extent the finding is not borne out by the evidence. The general conclusion of law that plaintiff was entitled to judgment embraces the implied conclusion that there was no abandonment and no reversion of title to the property.

By the terms of paragraph 3 of the deed, discretion was vested in the Park and Recreation Board of Palos Verdes Homes Association with reference to "safeguarding said realty and any vegetation and/or improvements thereon from damage or deterioration" etc., and while it may appear that the neglect of the property was ill-advised and short-sighted, we think the trial court was not in error in holding that the condition of the deed had not been breached. The lawn and flowers were around the sales office, and it may be that the park and recreation board and the directors of the Homes Association felt that the maintenance thereof was less in the interest of the public than it was beneficial to the trustee. Doubtless the trustee felt this way about it, since it assumed the expense of restoring the lawn and maintaining the shrubbery. ■ It is well settled that a reversion of title for breach of a condition subsequent will not be decreed except upon clear and satisfactory evidence of a violation of the condition. (*Whitaker* v. *Regents of U. C.*, 39 Cal.App. 111, 113 [178 P. 308].)

■ A further contention of the trustee is that the deed to the city was in violation of the terms of the deed to the Homes Association and in violation of the agreement between the trustee and the association entered into concurrently with the conveyance of title to the association. The agreement pro-

vided that if any of the five parcels described therein, Lot N being included, should be sold during the life of the Palos Verdes trust, the proceeds of the sale should be immediately paid to the trustee; that if such sale be made after the termination of said trust, the proceeds should go to the Homes Association, and if the property or any part of it should be conveyed by the association without consideration, "then Homes Association agrees to obtain an agreement from the Grantee, or Grantees, of said property, containing the same general provisions for the disposition and use of any proceeds derived from a sale or sales made by said Grantee or his successors in interest. 4. It is expressly understood and agreed that during the life of this trust, the said Homes Association shall not sell, convey, dispose of or otherwise deal with the property herein described without first receiving the written consent of the first party and the Trustee under the said Palos Verdes Trust." (The trustee was named in the deed as "First Party.")

The trustee did not give specific written consent to the conveyance of Lot N by the association to the city. It now contends that the association took title to the property in trust, as expressed in the agreement, to be used and administered forever for park and/or recreation purposes for the benefit of the owners of property in Palos Verdes Estates and that the conveyance to the city was in violation of this trust. The construction of the agreement contended for is not consistent with the provisions of paragraph 5 of the deed, heretofore quoted, under which the association was authorized to convey the property "subject to the same conditions as herein contained with respect to the purposes for which said property may be used, to a Park Commission, or other body suitably constituted by law, to take, hold, maintain and regulate public parks"; etc. The deed to the city by its terms imposed upon the city an obligation "insofar as any or all of said lands are for park purposes, to preserve and maintain said properties for such park purposes" and it recited, "This conveyance is made pursuant to the permission contained in certain deeds to this Association to convey said property to a park commission or other body suitably constituted by law to take over, maintain and regulate public parks, the grantee City, as a city of the sixth class, being suitably constituted so to do." The provisions of the deed above quoted evidence the understanding and intention of the parties that title to Lot N might ulti-

mately be conveyed to the city or its park commission. The deed to the city was not in violation of any condition or covenant of the deed to the Homes Association but was expressly authorized by the terms of that deed which we have quoted.

The provision of the agreement requiring the consent of the trustee to any conveyance of the property during the life of the Palos Verdes trust, read in connection with paragraph 5 of the deed heretofore quoted, must be construed as relating to conveyances other than those to a park commission, or other body suitably constituted by law, to take, hold, maintain and regulate public parks. The two contemporaneous documents should be read together for the proper interpretation of the agreement, and the provision of the deed which authorized such conveyances of property to the city without any further consent of the trustee must prevail over the general provision of the agreement that the property should not be conveyed without the trustee's consent. Under this construction, the conveyance to the city without specific consent of the trustee was not in violation of the agreement.

The city holds valid title to the lot in question, as park property. The decree declares that the trustee and the other defendants have no right, title or interest in or to said property, and they are enjoined from ever asserting any claim thereon adverse to the plaintiff. It should be modified to provide that the trustee under the trust identure had the right to possess, maintain and use sales headquarters on Lot N for such time as the same, in the judgment of the trustee, may be necessary or expedient for the proper exercise of its powers and the performance of its duties as trustee, and that the title of the city is subject to any and all rights of the trustee reserved in its deed to Palos Verdes Homes Association, and subject to all rights reserved by Palos Verdes Homes Association in its deed to the city.

As thus modified, the judgment is affirmed; costs of appeal to appellant.

Desmond, P. J., and Wood, J., concurred.

A petition for a rehearing was denied August 2, 1946.