**LITTLE v. STEPHENSON et al.    (No. 7828.)\***

Court of Civil Appeals of Texas. San Antonio.
Oct. 26, 1927.

Rehearing Denied Jan. 4, 1928.

**1. Appeal and error ⬤⇒518(1)—Pleadings are entered in record in order of time in which they occur; amended pleadings taking place of those they are substituted for.**

Pleadings are entered in record in order of time in which they occur, and amended pleadings take place of those for which they are substituted.

**2. Mines and minerals ⬤⇒78(7)—Question of damages sustained by defendant claiming title in action for drilling oil well held for jury.**

Determination of question of damages, where assignee of oil and gas lease had drilled well on leased land, and where another claimed right to land based on assignment in uncertain and dubious manner, was for jury.

**3. Mines and minerals ⬤⇒78(7)—Refusal of court to define words "commercially productive gas well" as used in lease was error.**

Where assignee of lessee holding under lease sought to have words "commercially productive gas well" as used in lease defined, and they were such that definition should have been given to guide jury, it was error to allow jury to use their own conception of meaning to be given words.

**4. Frauds, statute of ⬤⇒63(2)—Claimed assignment of lease of oil and gas lands, of which there was no memorandum in writing, was within statute of frauds.**

Where assignee of lessee drilled well on land under oil and gas lease, and another claimed right to leased land under an assignment of which there was no memorandum in writing, case was within statute of frauds.

**5. Mines and minerals ⬤⇒73½—Assignee of lessee under lease continuing while gas was produced in "paying quantities" was judge of whether gas was so produced.**

Assignee of lessee under lease providing that gas be produced in "paying quantities" was judge of whether or not gas was being produced in such quantities, provision being for his benefit, and even small profit may be paying quantity.

Error from District Court, McMullen County; T. M. Cox, Judge.

Action by John L. Little against Donald Stephenson and others. Cross-action by defendants. Judgment for defendants on cross-action, and plaintiff brings error. Reversed and remanded.

Briscoe & Morris and Joe L. Hill, all of San Antonio, for plaintiff in error.

Frank R. Williams, of San Antonio, for defendants in error.

FLY, C. J. [1] The transcript in this case begins with the answer and cross-action of defendants in the lower court, defendants in error in this court, followed by "plaintiff's first original supplemental petition" and "defendants' first supplemental answer." On page 28, "plaintiff's first amended original petition" begins. Doubtless the record in the transcript was so entered because the rules require that the proceedings shall be entered in the order of time in which they occur, but there is a provision that "amended pleadings shall take the place of those for which they are substituted." That required the amended petition to be first entered in the transcript. It offers a convenience in consulting the record which should not be disregarded.

We ascertain from the amended petition that this suit was filed by plaintiff in error herein, identified as plaintiff, against Donald Stephenson, W. M. Stephenson, and the Grubstake Investment Association, for the value of his services and material used in drilling a well for gas and the value of the products of the well, which were converted by defendants to their own use and benefit, after fraudulently dispossessing plaintiff of the well. The cause was submitted to a jury on special issues, and judgment was rendered that plaintiff take nothing by his suit, and that Donald Stephenson recover of plaintiff on his cross-action the sum of $12,000.

The jury found that the well was completed to a total depth of 750 feet; that the reasonable cost of completing the well to a depth of 750 feet was $3,500. The court instructed a verdict in favor of defendants in connection with the issues. Plaintiff requested the presentation of special charges which were all refused, except the fourth, which was:

"Was said well completed as a commercially productive gas well under said lease, as hereinafter defined?"

The court did not give the definition of "a commercially productive gas well" which accompanied plaintiff's special issue, nor did he give any definition of the term, although he required the jury to follow the definition given. The jury answered the question in the negative. The jury was not permitted to pass upon the amount of damages sustained by Donald Stephenson, but the court seems to have taken that matter from them, and to have peremptorily decided that Donald Stephenson should recover $12,000 from plaintiff.

The statement of facts shows that on December 7, 1922, John B. Fisher of New Orleans executed to W. M. Stephenson, acting for the Grubstake Investment Association, a certain oil and gas lease on 1,476 acres of land in McMullen county. Afterwards, on April 24, 1924, W. M. Stephenson, acting for the Grubstake Association, leased 49 acres of the land to C. H. Lockhart, for 30 days, and,

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
\*Writ of error granted by Supreme Court March 14, 1928.

1 S.W.(2d)—23

during drilling operations on said land, "as long thereafter as oil or gas is produced therefrom in commercially paying quantities." Lockhart bound himself to commence the well in 30 days from date of lease, and to complete it to the depth of 750 feet, and complete it within 60 days from "the date of actually spudding in for the first time," and a forfeit of $10 a day for each day over the 60 days was provided for. Lockhart transferred his interest in the lease to plaintiff after he had failed and refused to pay plaintiff for his labor and expense in digging a well under employment by Lockhart. W. M. Stephenson was active in getting Lockhart to assign to plaintiff. Plaintiff heard of no claim of Donald Stephenson to the lease or oil and gas, until after the well was finished and was flowing 1,900,000 cubic feet of gas per day. Plaintiff has not received any remuneration whatever for the well. Donald Stephenson stated that, while plaintiff was bringing in the gas:

"I imagined that I owned a gas lease." He admitted using gas from the well, and that he had not "paid one cent for the well."

He said:

"I have not paid anything for the well, the pipe, or the casing. * * * Will I admit before this jury that I am getting something for nothing? I say that Little forfeited his lease. I am getting the use and benefit of that well, and getting it for nothing. The Houston-Gulf Gas Company is not paying a cent for the gas they are getting out of there. They are using the gas from this well to pump water out of the river with a gas engine and water pump, and they are getting the gas from the well—the well that John Little drilled. I am not getting a red cent for the water that's pumped out of the river there, but I am getting $10 a month for the gas used out of that well to pump the water with."

He swore that he was working for the Houston-Gulf Gas Company on a salary of $250 and $10 a month for gas out of the well dug by plaintiff. He further stated:

"I did not give the Grubstake a cent in money for this assignment that was introduced in evidence a while ago, but I gave them the risk of my life a number of times—I gave them my labor, and in turn the Grubstake Investment Company has given me this lease of 49 acres in compensation for my labor and endeavors to do something for them as time has gone on. * * * I didn't give John Little a red cent for this well that he drilled—he forfeited his lease, and that gave me the well. What did I pay the Grubstake for this lease? As I stated a while ago, the lease was given to me to pay me for my services and for risking my life a number of times in controlling gas wells."

He claimed the lease was given to him verbally in 1918 by W. M. Stephenson, but afterwards stated that it was promised in 1918, and finally conveyed to him in 1924. He had nothing in writing to evidence any conveyance of any lease to him. In 1924 Lockhart had a lease in writing from W. M. Stephenson, and the latter advised plaintiff to take a sublease from Lockhart in that same year. Donald Stephenson had a deed of trust for $36,000 given to him by his father, W. M. Stephenson, which Donald swore was given for his services, but which the testimony of his father indicates was given to cover up property and protect it from anticipated judgments. There was never any transfer made of any land or land leases by the Grubstake Association to Donald Stephenson, unless such deed of trust be such conveyance.

[2] The question of the ownership of the lease of the 49 acres of land was a pivotal one, upon which the right of Donald Stephenson to recover depended, and yet that question was not submitted to the jury. The question of the amount of the damages sustained by Donald was one of vital interest in the case, and was a contested point, and yet, without allowing the jury to pass on the question, the court determined that plaintiff was indebted to Donald Stephenson in the sum of $12,000. The basis of this judgment is not apparent from the evidence, and it was at the best a question to be determined by the jury.

[3] Appellant sought to have the words "commercially productive gas well" defined in connection with his fourth special charge which was given by the court, but the court failed or refused to give such definition or any definition of the words. The words were used in the lease, and were such that they should have had a definition of them given to guide the jury, and they were allowed to use their own conception of the meaning to be given to words that courts and text-book writers have thought should be defined for the use of courts and attorneys.

[4] The lease was for five years at least, and capable of being extended, and yet the whole claim of Donald Stephenson was based on an assignment of part of the lease verbally, and that in a very uncertain and dubious manner. There was no memorandum in writing to evidence the assignment, and it has been held that such assignment is within the terms of the statute of frauds. The circumstances of this case bring it peculiarly within the purview of the statute. Thornton, Law of Oil and Gas, §§ 80 and 329; Priddy v. Green (Tex. Civ. App.) 220 S. W. 243; Gatewood v. Graves (Tex. Civ. App.) 241 S. W. 264. No one would claim that the original lease for five years was not required to be in writing, and it necessarily follows that an assignment of it, or a part of it, must be in writing. Beckett-Iseman Oil Co. v. Backer, 165 Ky. 818, 178 S. W. 1084.

[5] The evidence of forfeiture of the lease was insufficient to sustain any judgment against plaintiff. He, acting in good faith, was the judge of whether or not the gas was being produced in paying quantities. Thornton, Law of Oil & Gas, §§ 148, 149, 151, and

896. The words "paying quantities" are inserted in oil and gas leases for the benefit of the lessee, and even a small profit may be a "paying quantity." Thornton, § 151.

Because the evidence does not sustain the judgment, and on account of the other errors pointed out herein, the judgment is reversed, and the cause remanded.