### STEPHENSON et al. v. LITTLE.
#### (No. 1132—5074.)

Commission of Appeals of Texas, Section A. Jan. 9, 1929.

Eskridge & Williams, of San Antonio, for plaintiffs in error.

Briscoe, Morris & Hill, of San Antonio, for defendant in error.

NICKELS, J. Little sued Grubstake Investment Association, W. M. Stephenson, and Donald Stephenson to recover mineral estate in a certain 49 acres, the "value of the products" of a well drilled thereon by him, "value of * * * said well," and for general relief. Right to the mineral estate was predicated on alleged acquisition of title through assignment (from Lockhart) of a lease contract executed by W. M. Stephenson ("acting for and on behalf of the Grubstake Investment Association"), "lessor," and Lockhart, "lessee." Other claims were rested in various collateral agreements and in equities.

Defenses included alleged noncompliance by Lockhart or assignees with essential terms of the contract (those, e. g., requiring seriatim completion of five wells), with resultant failure of passage of title or forfeiture (if title ever passed). All defendants alleged that Donald Stephenson was beneficial owner of the mineral estate when the lease contract was made—the contract having been made to show "W. M. Stephenson, acting for and on behalf of Grubstake Investment Association, lessor," merely for "convenience," but in recognition of Donald Stephenson's interest by all parties. Having averred (as shown) that Little never acquired title, etc., or had forfeited it, if ever acquired, Donald Stephenson set up a "cross-action" for damages—particularly noticed herein below.

The charge to the jury included instruction for verdict (which was returned) against Little's claims and submission of special issues (answered as indicated) as follows:

"Was the well drilled by John L. Little on the lease in question completed to a total depth of 750 feet?" Answered: "Yes."

"What is the reasonable cost of drilling and completely finishing a well on the lease in question to a depth of 750 feet?" Answered: "$3,500.00."

"Was said well completed as a commercially productive gas well under said lease, as hereinafter defined?" Answered: "No."

In connection with the question last stated the jurors were given this instruction:

"In order to produce gas in commercially paying quantities a well must produce gas at a pressure sufficient to be acceptable by those persons in position to receive the same in the field where produced; there must be an available market for such gas; the returns from the sales of the gas must be such as to make the drilling for and producing the same such a reasonable investment that a man of ordinary prudence and judgment would make the same. In determining the prudence and reasonableness of such investment, you shall consider the probable and possible cost of the well, the life of the well, the diminution in flow of gas therefrom, the possibility of failing to find gas, the probable returns from sales thereof. After considering the elements above set out, if you find that a man of ordinary prudence and judgment would make the necessary expenditure for the returns to be probably received, you will answer Special Issue No. Four in the affirmative."

The first and third issues (as reproduced above) had direct pertinency to Little's averments of compliance and to defendant's averments of noncompliance with certain important provisions of the lease contract. Nevertheless, the trial judge, in rendering judgment, treated the issues and answers thereto as having relation only to the matter of Donald Stephenson's "cross-action." It was adjudged (a) that Little "take nothing * * * against the defendants," and that the defendants "are discharged of all liability sought to be imposed upon them herein"; (b) that "Donald Stephenson do have and recover of and from John L. Little * * * the sum of Twelve Thousand Dollars," with interest, it being declared that his recovery is limited to that sum "by the allegations of said cross action" (meaning that Stephenson had prayed for $12,000 damages for alleged failure to drill four additional wells required by the contract, the reasonable cost of each of which he alleged to be $3,000.

Upon Little's appeal, the judgment was reversed, and the cause was remanded. (Tex. Civ. App.) 1 S.W.(2d) 353. Writ of error was allowed (principally) upon assignment of error in a holding by the Court of Civil Appeals "that the trial court did not give to the jury a definition of the term 'commercially productive gas well.'"

## Opinion.

■ 1. In the preliminaries of the judgment there is recital that the "jury returned * * * answers to the special issues submitted which * * * special issues and answers thereto were and are" as shown above, except that no reference is made to the definition of "commercially productive gas well." Hence, if the matter of the principal assignment be treated in the light of that recital alone, the statement of the Court of Civil Appeals to the effect that the trial judge did not submit to the jury "any definition of the term" is correct.

But in the transcript (above the statutory certificate) is a document which is declared to be the charge given, and on which (as there reproduced) is the purported signature of "T. M. Cox, Judge, District Court, McMullen county," and the purported signature of "C. E. Byrne, Foreman," attesting the jury's answers indorsed on the paper. That document includes (in immediate connection with the "special issue" lastly quoted) the definition reproduced in the statement above.

The judgment's recital will bear that interpretation which makes it comprehend reference only to the questions and answers of themselves. It does not declare nor indubitably imply that nothing more was submitted to the jury. In consequence, we are compelled to accredit other portions of the transcript; and, when that is done, it appears that a definition of "commercially productive gas well" was submitted to the jury. Whether a judgment recital would control in event of irreconcilable conflict, and whether the definition as given is correct, are questions which do not arise at this point.

It results that the assignment mentioned is well taken.

■ 2. Nevertheless, the judgment of the Court of Civil Appeals may not be reversed if, on the record as properly examinable, it was correct despite assignment of an untenable reason. Texas Brewing Co. v. Templeman, 90 Tex. 277, 38 S. W. 27; Holland v. Nimitz, 111 Tex. 419, 232 S. W. 298, 239 S. W. 185.

■ 3. Plaintiffs in error, by their application, inform us that verdict against Little (in respect to his claims) was instructed because of his failure to prove assignment from Lockhart et al.—consequently, failure to prove title. They say:

"Little claimed as an assignee * * * though he did not offer in evidence the assignment under which he asserted title, nor did he offer in evidence any document or statement in writing, or in parol, from any of the persons claimed by him to have been his immediate assignors. Such being the case, he wholly failed to show any evidence of title upon which he relied in the trial court and in such condition the trial court could not have done otherwise than instruct a verdict against him on his prayer for recovery of title and possession of the leasehold involved."

We can perceive no basis for a different theory for the trial court's action, and for

instant purposes we accept as true that stated by plaintiffs in error. And for reasons to be stated that action is fatal to the judgment in each of its phases.

Donald Stephenson's "cross-action" (as pleaded) rests in presupposition of assignment of the lease "contract" and its rights (at least in substantial part) to Little, for no other way is suggested in pleading or in the record for Little's becoming obligated by the stipulation for liquidated damages in respect to failure to complete the first well in time or by the covenant for drilling of four additional wells. In fact, the claim for damages as pleaded is expressly conditioned upon a decision that Little now has "some right, title or interest" in the leasehold. The averment is:

"But should it be held that the plaintiff herein now has any right, title or interest in the property mentioned in his petition, then * * * such rights are accompanied by liabilities imposed upon the said C. H. Lockhart * * * under the terms of the lease contract and * * * plaintiff * * * is liable for the performance of such obligations and for damages arising out of default in performance thereof, and by way of cross-action the defendant Donald Stephenson alleges as follows—i. e., he alleges failure to complete the first well in time (as basis for the claim for liquidated damages) and failure to drill the four additional wells as basis for his claim for damages in the sum of $12,000.00."

The jury found, it will be remembered, that the first well was in fact completed to the stipulated depth. That finding, in the view of the trial judge and of counsel for plaintiffs in error, had effect to preclude relief (on the "cross-action") as for "liquidated damages." This explanation of the judgment (on the "cross-action") is given in the petition in error:

"The reasonable cost of drilling and completely finishing a well on the lease in question to a depth of 750 feet was submitted to the jury under special issue No. 3 * * * to which issue the jury answered 'Three Thousand Five Hundred Dollars.' But since defendant Donald Stephenson on his cross-action had alleged such reasonable cost to be Three Thousand Dollars a well, his recovery was limited to his pleadings on that item, and since, as above stated, the jury found that the first well was * * * drilled to the contract depth and no recovery could be had on account thereof, the total recovery of Donald Stephenson on his cross-action was limited to * * * failure to drill the four wells at Three Thousand Dollars each, aggregating the Twelve Thousand Dollars covered by the judgment."

That explanation is well supported by the language and implications of the verdict and judgment when read with the pleading upon which they rest. And, since the inhibition of contemporaneous approbation and reprobation is obligatory upon courts and litigants, there is for the judgment as a whole no better support than mutually destructive rulings. Evidence relevant to the issues pleaded and to support the judgment rendered could not exist.

■ 4. In view of a retrial and of the inevitable importance therein of the words "commercially productive," "paying quantities," etc., attention is directed to the fact that those terms, as used by the parties to the lease contract, have relation to the character of a well as (and in so far as) completed, whether to the "750 foot sand" or to a lesser depth. This imports a measure for the gas (or oil) of itself and as then or immediately thereafter produced or producible. Consequently, that use of the terms is not comparable to use of the same or analogous terms in presently stipulating (expressly or impliedly) for an obligation or right in futuro or futuro performance of an obligation to drill, etc., or about refraining from drilling, as, e. g., in the contracts viewed in Texas Pacific C. & O. Co. v. Barker (Tex. Sup.) 6 S.W.(2d) 1031, 1036, and in Texas Co. v. Ramsower (Tex. Com. App.) 7 S.W.(2d) 872. It is probably true that a "man of ordinary prudence and judgment," in determining whether he would (or ought) drill a well as a matter purely of volition or in attempted performance of an obligation, would consider the elements laid down in the definition (of "commercially productive") given in the trial already had; but it cannot be true that such a man, having already drilled a well and therein expended money which (in whole or large part) will be irrevocably lost, unless he utilizes whatever "production" there be, would base a decision touching, e. g., abandonment vel non, upon consideration of the same elements. And in no situation, save where it is so "nominated in the bond," is the will or judgment of either party either the standard of right (or obligation) or evidence conclusively determining application of the standard. Cf. Texas Pacific C. & O. Co. v. Barker and Texas Co. v. Ramsower, supra.

In the situation so far disclosed, the general test, in our opinion, is whether it were reasonably possible to market or use the gas producible (at date of completion of the well and immediately thereafter) with some pecuniary profit—excluding from consideration expenses and liabilities incurred in bringing the well to completion. Aycock v. Paraffine Oil Co. (Tex. Civ. App.) 210 S. W. 851, par. 2, p. 852.

5. We recommend affirmance of the judgment of the Court of Civil Appeals.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.