[Civ. No. 8955. First Appellate District, Division One.—July 6, 1934.]

F. C. RIEDMAN et al., Respondents, v. F. M. BARKWILL et al., Appellants; CHIKSAN OIL CO., LTD., Cross-Defendant and Respondent.

E. V. Knauf, Seiler & Seiler and Oscar Seiler for Appellants.

Fred M. Riedman, James L. Hansen and Archie G. Cope for Respondents.

Elliott & Aberle for Cross-Defendant and Respondent.

GRAY, J., *pro tem.*—Plaintiffs, by their complaint containing the allegations usual for such purpose, sought to quiet their title to lands in Signal Hill, Long Beach. In their answer, defendants pleaded the execution and delivery of an oil and gas lease by plaintiffs, and its assignment to defendants and alleged its full performance by them. The defendants also cross-complained against cross-defendant, a subsequent lessee, to quiet title to their leasehold and to oil-well casing. In answer thereto, cross-defendant alleged that defendants had breached their lease, had abandoned it and the casing and were estopped by their conduct from asserting any interest in the lands or casing. Three determinative issues were tried, to wit: The termination of the lease, its abandonment and defendants' estoppel. From a judgment following findings on these issues, adverse to them, defendants appeal, asserting that the evidence does not support such findings.

The lease provided that "this lease shall terminate as to all rights and obligations contained hereunder unless the Lessee shall on or before 45 days from date hereof commence actual drilling of a well for oil or gas on the above described land, and prosecute the drilling thereof with due diligence and dispatch until a depth of 7200 feet has been reached, *unless oil or gas is found in paying quantities at a lesser depth . . .* " (Italics ours.) The court found "that the oil well drilled on said premises was drilled to a depth of approximately 4278 feet and no further and it is true that *oil or gas was never found in paying quantities*". (Italics ours.) There is no dispute as to the correctness of the first part of the finding but the parties seriously differ as to whether the italicized part is warranted by the evidence. This difference is mainly due to the correct answer to the legal question whether the cost of drilling and equipping the well is to be added to its cost of operation in determining if oil or gas is found in paying quantities. Whether both costs or only the second are to be considered depends upon the particular right or obligation of the lease, in connection with which the phrase "in paying quantities" is used. (Notes, 48 A. L. R. 887; 84 A. L. R. 761; Mills and Willingham "Law of Oil and Gas", p. 122; Summers

"Oil and Gas", p. 317.) Where the lessee is obligated to drill to a specified depth unless oil or gas is found in paying quantities at a lesser depth, the exception means in sufficient quantities to pay a reasonable profit on the necessary sum required to be expended, including the cost of drilling, equipping and operation of well. (*Ardizonne* v. *Archer,* 72 Okl. 70 [178 Pac. 263]; *Keechi Oil & Gas Co.* v. *Smith,* 81 Okl. 266 [198 Pac. 588]; see, also, *Stephenson* v. *Little,* (Tex. Com. App.) 12 S. W. (2d) 196.)

■ The lessor may maintain an action to quiet his title, if the lessee has forfeited his rights under the law by failure to comply with its covenants or conditions (*Andrews* v. *Russell,* 85 Cal. App. 149 [259 Pac. 113]). In such an action, the lessor, as plaintiff, establishes a *prima facie* case by proof of his title, if denied. The lessee, as defendant, is then required to prove his interest, which is done by the introduction of the lease. Thereupon, the plaintiff may prove matters in avoidance of the lease. (*Cuddy* v. *O'Brien,* 55 Cal. App. 469 [204 Pac. 37].) ■ A condition subsequent, which permits a forfeiture by the lessor, is, under section 1442 of the Civil Code, to be strictly interpreted against him. (*Jameson* v. *Chanslor-Canfield M. Oil Co.,* 176 Cal. 1 [167 Pac. 369]; *Taylor* v. *Hamilton,* 194 Cal. 768 [230 Pac. 656].) The burden of proving the facts creating the forfeiture rests upon the lessor. (*Reclamation District* v. *Van Loben Sels,* 145 Cal. 181 [78 Pac. 638].) The evidence of violation of the condition must be clear and satisfactory to justify a court in decreeing a reversion of the conveyance. (*Whitaker* v. *Regents of University,* 39 Cal. App. 111 [178 Pac. 308].)

■ On the issue of the termination of the lease, the evidence discloses the following facts. On October 9, 1929, which is the date of defendants' assignment of the lease, the depth of the well was about 800 feet. Between that date and January 11, 1930, defendants drilled the well to a depth of 4,278 feet. From January 11th to February 13th and from March 20th to May 22d, the well produced gas, which sold for $432.48. From January 11th to February 13th and from March 20th to April 29th, oil was produced, which sold for $5,881.32. Between February 13th and March 20th, production was interrupted by attempts to fish out part of the casing which had been lost in its removal.

568

The well was cemented twice. The well was wet from the start and the percentage of water increased until finally production was stopped by water breaking into the well. The cost of operation was $500 per month, but for what period is not stated. There is no evidence as to cost of drilling, cost of cementing the well or the cost of equipping it. Therefore, the evidence was insufficient to determine whether or not oil and gas were found in paying quantities.

The court found "that the defendants . . . on or about the 29th day of April, 1930, discontinued all of their operations on said property and ceased work on said property and conveyed all of the personal property located on said premises hereinabove described to Oil Tool Exchange Inc., and did then vacate and abandon said premises and thereafter did make no further attempt to drill or do any other work on said premises or to in any way comply with the terms or conditions of the lease under which they held title to said premises; that plaintiff made repeated demands on the defendants . . . but said defendants . . . thereafter failed to drill or do any further work on said premises nor made any attempt to do so". The evidence, without conflict, shows that production ceased on April 29th, that thereafter the well was idle, that no further work was done, that demand was served by plaintiffs upon defendants notifying them as to their default and demanding their performance, that six or seven months before January 19, 1931, the Oil Tool Exchange had acquired all personal property, except the casing, used in the operation of the well and that the parties for several months negotiated the purchase by plaintiffs of such personal property, including the casing and a relinquishment by defendants of all interest in the property and lease. Appellants do not deny these acts but argue that there was no legal abandonment because of the absence of any evidence showing their intention to abandon. "Nonuser alone, without any intention to abandon, does not constitute an abandonment (*Utt* v. *Fry*, 106 Cal. 397 [39 Pac. 807]) ". (*Herbert* v. *Graham*, 72 Cal. App. 314, 317 [237 Pac. 58].) The intention is to be determined from the facts and circumstances. (*Herbert* v. *Graham*, supra.) "The decisions are uniform in holding that abandonment is a question of intention and that abandonment may be proved by the acts and conduct of the party alleged to have abandoned the

property in controversy." (*Thornton* v. *Phelan,* 65 Cal. App. 480, 483 [224 Pac. 259].) The following excerpt from *Rea* v. *Glenn,* 133 Cal. App. 82, 87 [24 Pac. (2d) 204], is particularly appropriate: "The question of abandonment, whether it be a complete abandonment or a cessation of operations with intention of never resuming, is always one of act and intent. Every fact and circumstance is to be considered and given its proper weight. And we think this is exactly what the trial court did and in our opinion it reached a conclusion finding ample support in the evidence. Findings of ultimate facts are binding upon appeal, not only when there is a direct conflict regarding the probative facts, but when those facts are fairly susceptible to opposing inferences. (*Northwestern P. C. Co.* v. *Atlantic P. C. Co.,* 174 Cal. 312 [163 Pac. 47].)"

In their amended cross-complaint, defendants sought to quiet their title to the casing left in the well, not as against the plaintiff but solely as against the cross-defendant. The latter's answer pleaded certain facts, which it claimed estopped the defendants from asserting title to the casing. As to these facts the court made the following findings: "That it is true that the defendants . . . when informed of Chiksan's drilling operations on said premises and knew that said Chiksan Oil Co., Ltd., was drilling an oil well on said premises and using the casing already on said premises for such purpose and for its drilling operations, that said defendants . . . never at any time informed the cross-defendant, Chiksan Oil Co., Ltd., that they owned such casing so being used by said Chiksan Oil Co., Ltd., or did said defendants inform said cross-defendant that they owned an interest in and to said casing. It is true that the defendants knew that said Chiksan Oil Co., Ltd., was negotiating with the plaintiffs herein for the obtaining of an oil and gas lease on said premises above described and were also negotiating for the purchase of the casing in said oil well and the derrick and other equipment on said property and that when said defendants were informed of such negotiations, that said defendants asserted no claim or interest in any of said property and stated that they have lost all of their right, title, and interest in and to the lease and casing on said premises as well as the other oil well equipment and

personal property on said premises. The court finds that it is true that by the conduct of the defendants . . . in not asserting their interest or claim in and to the leasehold interest and casing on said premises, that said defendants are estopped to now assert such claim and interest against the Chiksan Oil Co., Ltd., in and to said leasehold interest and said casing.''

The evidence, without conflict, discloses the following facts pertinent on this issue. The lease between plaintiffs and defendant provided that ''in case of abandonment of any well by Lessee, if the Lessor desires to retain the same, he may notify the Lessee to that effect and thereupon the Lessee shall leave such casing in the well as the Lessor may require, and the Lessor shall pay to the Lessee fifty per cent (50%) of the original cost of such casing on the ground.'' Heretofore it has been shown that defendants abandoned the well and left therein the casing. The record shows that the complaint was filed October 24, 1930, that a default judgment was entered against defendants, which was vacated on February 21, 1931, because of a defective summons, that the answer was served and filed on March 2, 1931, and the cross-complaint served May 9, 1931, and filed May 14, 1931, pursuant to an order based upon a stipulation. The lease from plaintiff to cross-defendant was dated January 12, 1931, and the bill of sale to the casing between the same parties was dated January 17, 1931. Between the entry and vacation of the default judgment, plaintiffs and defendants had numerous negotiations, in which the latter were advised of the former's intention to lease the property and sell the casing to cross-defendant and futile attempts were made to fix the amount and manner of payment due to defendants for the casing under the quoted provision of the lease. Some of these negotiations occurred in the presence of an officer of the Oil Tool Exchange and others in the presence of an official of cross-defendant. At all times it was assumed, with defendants' acquiescence, that they had abandoned the well and their rights in the casing were limited to the compensation fixed by said provision of the lease. Their first assertion of ownership of the casing is contained in their cross-complaint. The findings are therefore amply supported by the evidence. (*Martin* v. *Feigen-*

*berg*, 203 Cal. 347 [264 Pac. 477].) Even if the findings were unsupported by the evidence, defendants could not quiet their title to the casing against cross-defendant, because, under the above-quoted provision, title had passed from themselves to plaintiffs.

Defendants have made twelve assignments of error in the admission or exclusion of evidence in such a manner as to warrant no discussion. They merely refer to the portion of the transcript where the ruling occurs and baldly state the ruling is erroneous on specified grounds. The evidence in connection with which the question is asked is not given so it is impossible to intelligently pass upon the matter. No assistance is given by way of argument or citation of authority. No attempt is made to show that the error claimed could have in any way affected the judgment. Cross-defendant in its brief has supplied these deficiencies and demonstrated, first, that the rulings are not erroneous and second, the errors, if any, are without prejudice.

The judgment is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 4, 1934.