**PARAMOUNT PEST CONTROL SERVICE, a Corporation, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 16512.**

United States Court of Appeals Ninth Circuit.

June 14, 1962.

**116**

Avakian & Johnston, and J. Richard Johnston, Oakland, Cal., for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Cecil F. Poole, U. S. Atty., Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Joseph Kovner, Attorneys, Department of Justice, Lynn J. Gillard, U. S. Atty., Washington, D. C., and Thomas E. Smail, Jr., U. S. Atty., San Francisco, Cal., for appellee.

Before STEPHENS, ORR and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

In this taxpayer's suit for the recovery of federal income and excess profits taxes for 1953 and 1954, paid pursuant to the deficiency determination by the District Director of Internal Revenue, both parties made motions for summary judgment. The District Court granted the Government's motion and the taxpayer has appealed.

Taxpayer is presently engaged in the structural pest control business in the San Francisco Bay Area; prior to 1953 it also maintained staffed and outfitted branch offices in other localities where it carried on business under its corporate name Paramount Pest Control Service, Inc.; during and between the years 1948 and 1953 it transferred all these outlying establishments to the various managers of those branches. There were· eight of these transactions, each of which was evidenced by a written agreement.

In computing its taxable income, taxpayer dealt with certain of the sums paid by the transferees as proceeds from the sale of capital assets, but the District Director, concluding that the transactions in fact were leases and not sales of the several businesses, held that the payments constituted ordinary income not eligible for preferred tax treatment.

■ The motion was submitted on the agreements, a stipulation of facts; and several affidavits filed by taxpayer. It appears from a memorandum opinion that the District Court, believing the parol evidence rule prevented a consideration of the affidavits, excluded them, and rested the judgment against the taxpayer solely upon the agreements and the facts appearing in the stipulation. Taxpayer urges a number of reasons why the affidavits should have been accepted by the court, but in our view of the matter only one need be discussed. Rule 56 (e), Federal Rules of Civil Procedure, 28 U.S.C.A., permits the use of affidavits in support of or in opposition to a motion for summary judgment, but also requires that the facts stated in them be admissible in evidence upon a trial. Obviously then, it was incumbent upon the court to determine whether the proffered proof would be admissible in evidence, and if it clearly infringed upon the parol evi-

dence rule then there was no alternative save to reject it. Ford v. Luria Steel & Trading Corp., 192 F.2d 880 (8th Cir. 1951); conversely, however, if the extrinsic evidence would be admissible under some exception to that general rule then it should have been considered. Simpson Bros., Inc. v. District of Columbia, 85 U.S.App.D.C. 275, 179 F.2d 430 (1949).[1]

▮ The agreements purport to embrace both sales and leases; they contain numerous provisions commonly appearing in instruments of either kind; they provide for two types of payments: one, a liquidated installment payable monthly to apply on a stated amount designated the "purchase price" and which is allocated to the property that is sold, and the other in the nature of a continuing royalty also payable monthly and measured by a percentage of business receipts payable for the property that is licensed. In most of the agreements the "sold property" is referred to generally as all assets comprising the business, but elsewhere good will is expressly excluded from the sale; a further provision relating to the royalty payments contains the statement that those payments are the fee or rental for the licensed use of the name Paramount Pest Control Service.

Taxpayer, consistent with its contention that the transactions were in part sales and in part licenses, reported the installment payments as return of capital and the royalty payments as ordinary income, so that the deficiency resulted only from taxpayer's failure to include the whole of the installments as taxable income. However, the District Director conceded after making the deficiency assessments, and by the stipulation filed in this suit acknowledged that insofar as the installment payments were attributable to a sale of tangible property of the branch businesses, they represented a return of capital.[2]

If the amount of the "purchase price" designated in the several agreements reflected the approximate or agreed value of the property described in the provision to which the installment payments were related then the parol evidence rule would dictate the exclusion of the taxpayer's affidavits, since the affiants' statements were to the effect that the purchase price included not only the physical assets but also "running service contracts" and other items that make up good will (Grace Bros. v. Commissioner, 173 F.2d 170 (9th Cir. 1949); Dairy Dale Co. v. Azevedo (1931), 211 Cal. 344, 295 P. 10), and to this extent the facts appearing in the affidavits conflicted with the further provision of the agreements allocating the royalties to that particular asset.[3]

However, the stipulation before the court clearly demonstrates a vast difference exists in all eight transactions

---

1. For a statement of the parol evidence rule see Ford v. Luria Steel & Trading Corp., 192 F.2d 880 at 882 (8th Cir. 1951).

2. The physical assets of the branches consisted both of inventory items (proceeds of which were ordinary income, Section 22, Revenue Code of 1939, 26 U.S. C.A. § 22) and of "property used in trade or business" proceeds of which under sections 117(j) (1) and (2) Revenue Code of 1950 as amended, are "considered" as long-term capital gain. The adjustment made necessary by virtue of the stipulation resulted in a slight reduction in the amount of the deficiency and since taxpayer had already paid the sum initially demanded by the District Director, the District Court, by amended judgment,

awarded taxpayer the overplus and thus in fact ultimately rendered judgment for taxpayer (but in a sum far less than taxpayer sought to recover).

3. These affidavits were made by all parties to, as well as the attorney who prepared, the agreements. Therein the affiants stated that the taxpayer intended to sell and the transferees to purchase the branch businesses as going concerns and that the figure designated in the agreements as "the purchase price" reflected not only the agreed value of the physical property belonging to each branch but also customer accounts and other items of good will which are referred to as "contracts"; they further stated that the consideration for this latter item was computed by multiplying by six the aver-

between the value of the property appearing to be sold and the sum of the installments required by each contract.

The hybrid character of the agreements themselves renders the intentions of the parties far from clear and we think requires a resort to extrinsic evidence to assist in discovering what the parties actually contemplated. The stipulated facts tend to fortify this conclusion for it is impossible to reconcile those facts with the agreements themselves which make the installment payments part of the purchase price and contain elaborate and separate provisions fully covering the matter of royalties. In short, we conclude the lower court erred in rejecting these affidavits.

But the Government also urges that the result would have been the same even if the proof had been received; it contends that "[a]ll of the good will of the taxpayer's service business was associated with its name, the lease of the name necessarily carried with it the good will of the customers who knew the name." It is apparent that the Government's arguments rest upon a factual basis that must first be established before the asserted conclusion may follow. While trade-name and good will of the business are often one and the same thing the name is not necessarily the sole element of good will. In Grace Brothers v. Commissioner, 173 F.2d 170, 176 (9th Cir. 1949) this court made an extended investigation of the nature and components of good will and concluded that "the good will may attach to (1) the business as an entity, (2) the physical plant in which it is conducted, (3) the trade-name under which it is carried on and the right to conduct it at the particular place or within a particular area, under a trade-name or trademark; (4) the special knowledge or the 'know-how' of its staff; (5) the number and quality of its customers"; and it has been held that the name under which a business was

conducted may be excluded from a transfer of the remainder of the good will. Masquelette's Estate v. Commissioner, 239 F.2d 322 (5th Cir. 1956). As a question of fact, it must be determined whether there are other elements of good will which are transferred apart from the business name and if so, what kind of interest is passed in them.

Here the affidavits show the existence of a factual issue regarding the real nature of these transactions, a matter that can only be resolved upon a trial at which either party may submit evidence tending to proper construction of the agreements.

The judgment is reversed and the case remanded to the trial court with directions to proceed in accordance with this opinion.

age gross receipts of the business for the twelve months immediately prior to the transfer, and they further said that

although the agreements speak of the lease of good will, the parties meant the lease to extend only to the trade name.