C. Franklin Hubble and Adeline Hubble v. Commissioner.
Hubble v. Commissioner
Docket No. 92928.
United States Tax Court
T.C. Memo 1963-86; 1963 Tax Ct. Memo LEXIS 256; 22 T.C.M. (CCH) 395; T.C.M. (RIA) 63086; March 27, 1963
Clarence A. Bradford, Esq., for the petitioners. Carl W. Kloepfer, Esq., for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined a deficiency in the income tax of petitioners for the year 1958 in the amount of $1,886.44. The sole issue for determination is whether the sum of $5,000 expended by petitioner C. Franklin Hubble in connection with his acquisition of the Neblett Insurance Agency is properly *257 deductible as advertising expense under section 162 of the Internal Revenue Code of 1954, or, as contended by respondent, represents a capital expenditure for the purchase of good will which is forbidden deduction by section 263 of that Code. [1]
Findings of Fact Some of the facts were stipulated by the parties. Their stipulation, together with attached exhibits, is incorporated herein by reference. C. Franklin Hubble and Adeline Hubble are husband and wife residing in Wayne County, Michigan. Their joint return for the year 1958, made on the cash basis and for the calendar year *258 period, was filed with the district director of internal revenue, Detroit, Michigan. Adeline Hubble has been joined herein solely by virtue of her participation in the filing of a joint return. Therefore, as used hereinafter, the term "petitioner" will refer only to C. Franklin Hubble. Petitioner has been engaged in the operation of a general insurance business as sole proprietor in the Detroit area since 1932. He initially conducted his business under the name "Riverside Agency" but changed to "Riverside and Crawford Agency" in 1948 when he acquired the business of the Crawford insurance agency. For many years prior to his death on January 1, 1958, James D. Neblett, Sr., had conducted a general insurance agency in Detroit, Michigan, under the names "James D. Neblett Agency" and "Neblett Insurance Agency." On or about January 14, 1958, petitioner conferred with the attorney for the estate of James D. Neblett, Sr., relative to the purchase of the Neblett Insurance Agency. As a result, petitioner, on January 15, 1958, submitted to the administratrix of the Neblett estate the following written offer: I hereby offer to purchase the insurance business of James D. Neblett, Sr., Deceased *259 which includes all contingent commissions that are earned and outstanding as of this date; all records pertaining to the business including policy expirations, renewals, dailys, policy register; alphabetical and numerical cards, files and containers; correspondence relative to insurance, daily reports and forms on hand for the sum of Two Thousand Seven Hundred Thirty Four and 69/100 Dollars, ($2,734.69). I further agree to pay Five Thousand Dollars ($5,000.00) for the unrestricted use of the name (James D. Neblett Agency) for advertising purposes. This offer was accepted on behalf of the estate on the same day, and a bill of sale of even date, reciting in part as follows, was prepared by the estate's attorney and executed by the administratrix: Known all men by these presents, that Eleanor V. Boyce, Administratrix of the estate of James D. Neblett, Sr., * * * for and in consideration of the sum of $7,734.69 * * * to her paid by C. Frank Hubble, * * * has bargained and sold, and does grant and convey, unto the said [C. Frank Hubble], * * * all of the following goods and chattels, to wit; Unrestricted use of the names JAMES D. NEBLETT Agency or NEBLETT INSURANCE AGENCY, for which *260 item is allocated the sum of $5,000.00 of the purchase price, all records pertaining to the former operation of said business by the deceased, including policy expirations, renewals, dailys, policy register, alphabetical and numerical cards, files and containers other than cabinets, correspondence relative to insurance daily reports and forms on hand, and all contingent commissions earned and outstanding as of this date. * * *
This transfer is intended to be a sale of the Agency as a going business, other than the physical equipment and location, and it is understood that the Estate will assume and pay all debts incurred by the Agency prior to the date hereof, settlement with the companies represented to be made by the Estate forthwith. Pursuant to the sale the insurance records of the James D. Neblett Agency were transferred to petitioner. As of January 15, 1958, there were 452 policies of insurance in force with the Neblett Agency. Of this number 84 were automobile policies, written for a period of one year, and the remainder fire and marine and casualty policies written for periods of one, three or five years. The records transferred to petitioner showed the date on which *261 each policy of insurance then in force which had been written by the James D. Neblett Agency would expire, the name and address of the person holding such policy, the type of policy, the type of property insured, the amount of insurance provided and the name of the issuing insurance company. The acquisition of the Neblett Agency thus placed petitioner in an advantageous position to secure insurance business from the former Neblett customers by providing him with the means to be aware of, and to make timely calls upon, such customers. Armed with the information contained in the records which he had obtained, petitioner circularized the Neblett policyholders by card, advising them of his purchase of the Neblett agency and his desire to be of service should any losses be incurred, or additional insurance be required, by them. Petitioner also contacted each of the Neblett insureds shortly before his policy expiration date for the purpose of soliciting renewals. The record indicates that petitioner was successful in securing an undetermined number of renewals in this manner. In order to protect his right to the "unrestricted use" of the name "James D. Neblett Agency" petitioner, on *262 May 6, 1958, registered that name with the State of Michigan, by filing a Certificate of Conducting Business Under an Assumed Name. After his acquisition of the Neblett Agency petitioner continued during the years 1958, 1959 and 1960 to have the "James D. Neblett Agency" listed in the Detroit telephone directory. However, the address listed for the Neblett Agency was petitioner's own office address, and petitioner arranged to have all telephone calls to the "James D. Neblett Agency" received at his own office telephone. Opinion The total price which petitioner paid the Neblett estate in connection with his acquisition of the insurance business of James D. Neblett, Sr., deceased, was $7,734.69. Under the terms of petitioner's offer, $5,000 of this amount was ostensibly paid for "the unrestricted use of the name (James D. Neblett Agency) for advertising purposes," and petitioner has claimed that amount as an ordinary and necessary business expense for "advertising." Respondent's position is that the $5,000 expenditure claimed by petitioner was not an ordinary and necessary business expense within the meaning of section 162(a)[2] of the 1954 Code, but was an expenditure for the *263 acquisition of a capital asset in the nature of good will, deduction of which is specifically disallowed by section 263(a)(1)[2] and the regulations thereunder. Sections 162 and 263 of the Code being mutually exclusive, a determination that deduction of the claimed expense is disallowed by the latter makes moot the question as to whether it is "ordinary and necessary" within the meaning of the former. In general, section 263 prohibits the deduction of expenditures for the acquisition of capital assets, or "capital expenditures." Section 1.263(a)(2)(h), Income Tax Regs., provides that "the cost of good will in connection with the acquisition of the assets of a going concern is a capital expenditure," and therefore nondeductible. *264 What is at issue, then, in the instant case is whether the $5,000 paid by petitioner to the Neblett estate represents "the cost of good will in connection with the acquisition of the assets of a going concern." That petitioner acquired the assets of a "going concern" as a result of his offer "to purchase the insurance business of James D. Neblett, Sr., Deceased" seems clear to us. Neblett had been in the insurance business for many years; only 15 days elapsed between his death and the transfer of his business to petitioner; there is no evidence that any of the policies in force at the time of Neblett's death were cancelled during the interim before the business passed to petitioner; the bill of sale which consummated the transaction described what was being sold as a "going business," and both the offer and bill of sale specified that petitioner was to receive all contingent commissions earned and outstanding (i.e., accounts receivable) as of the date of the transfer. Having thus determined that what petitioner acquired was a "going business," the only remaining question is whether the $5,000 in issue represents the cost to petitioner of the good will of that business. The question *265 as to whether or not good will was sold is one of fact. Cf. Paramount Pest Control Service v. United States, 304 F. 2d 115 (C.A. 9, 1962). Although good will is not among the assets specifically referred to by the parties to the sale of a going business, this does not mean that none is being transferred. In such a case we are entitled to inquire whether it is perhaps bound up with the assets for which a stated payment is being made. Cf. Copperhead Coal Company, Inc., v. Commissioner, 272 F. 2d 45 (C.A. 6, 1959) affirming a Memorandum Opinion of this Court. Based on our analysis of all the facts, it is our view that the $5,000 which petitioner paid ostensibly for the unrestricted right to use the name "James D. Neblett Agency" was in fact a payment for the good will of the Neblett insurance business which was transferred as a result of the sale. However, even were we to assume, as petitioner would have us do, that no good will existed with respect to the Neblett business or name, we would still be compelled to find that the right to use the Neblett name, unrestricted as it was both as to time and method, was a capital asset in petitioner's hands. Charles P. Limbert Co., 9 B.T.A. 1390, 1398, *266 (1928). Because whatever benefits which might be derived from the exercise of this right cannot be confined, at the very least, to the year (1958) in which it was acquired, its cost certainly may not be fully deducted from income in that year, as petitioner has attempted to do. Clark Thread Co., v. Commissioner, 100 F. 2d 257, 258 (C.C.A. 3, 1938). Moreover, we are inclined to agree with respondent that because the right to use the Neblett name was "unrestricted" both as to time and method it was therefore nonexpiring, and, as such, its cost not only is nondeductible but also neither depreciable nor amortizable. Decision will be entered for the respondent. Footnotes
1. In his statutory notice of deficiency respondent also disallowed to petitioner as advertising expense an additional $465 because of failure to establish that the same was an ordinary and necessary business expense. While technically the pleadings placed this $465 in issue, no evidence was introduced by petitioner on the point, nor was any argument submitted with respect to it on brief. The Court will therefore assume petitioner to have abandoned the point, and that part of the total deficiency due to the disallowance of this item will not be considered to be in controversy.↩
2. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * * ↩
2. SEC. 263. CAPITAL EXPENDITURES. (2) General Rule. - No deduction shall be allowed for - (1) Any amount paid out for * * * permanent improvements made to increase the value of any property or estate.↩