**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**M. E. DIBBLE, Defendant-Appellant.**

**No. 23091.**

United States Court of Appeals,
Ninth Circuit.

July 6, 1970.

---

Leo M. Cook (argued), A. B. Broaddus, Ukiah, Cal., for defendant-appellant.

Jacques B. Gilin (argued) Asst. Atty. Gen., Shiro Kashiwa, Dept. of Justice, Washington, D. C., Spurr, Brunner & Nelson, Ukiah, Cal., James L. Browning, U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before BARNES, HUFSTEDLER, and WRIGHT, Circuit Judges.

HUFSTEDLER, Circuit Judge:

The United States brought this ejectment action against appellant Dibble to recover approximately 11 acres of land in the Lake Mendocino reservation area in California. Dibble answered, denying the charging averments of the complaint and asserting estoppel as an affirmative defense. After some preliminary procedural skirmishes, the Government moved for summary judgment. The motion was granted, and Dibble appeals from the ensuing judgment.

We reverse because the Government did not offer evidence sufficient to have sustained a finding that the County, under whose master "lease" Dibble held, was in breach of contract.

There is no dispute about the following facts: The United States owns the fee title to the land in issue. By written contract, the United States "licensed" the use of the land as part of a larger parcel to Mendocino County, pursuant to 16 U.S.C. § 460d. The County entered a subconcession license with one Mendoyoma, Inc., and Mendoyoma sublet the 11 acres to Dibble by written contract approved by the Army.

The Government claimed it was entitled to eject Dibble because it had terminated the County's master license for breach of conditions stated in its licensing agreement. Issue was joined on the question whether or not the County had breached its contract, giving the Government a right to terminate the master license.[1] Dibble claimed that the Government was estopped from ejecting him from the 11-acre parcel by reason of some of the acts of its agents. The Government argued that estoppel would not lie against it as a matter of law.

To prove that the County was in breach, the Government offered a series of exhibits attached to an affidavit of Harlan B. Watkins who identified himself as an Assistant to the District Engineer in the Army Corps of Engineers. One of those exhibits was a copy of a part of the master license. We say "a part" because the agreement refers to and incorporates a "Master Plan for Public Recreation Development * * * attached hereto * * * as Exhibit 'A'," and no such exhibit is attached. Next there is a copy of a letter addressed to the County, dated 4 December 1964, stating that the terms of the master license have been violated because the County has not provided the facilities and services specified "in the development plan for the area," and that the Government will terminate the license within thirty days unless there has been compliance. Next there is a copy of a letter dated 10 February 1965, addressed to the County, extending to 4 June 1965 the time within which the County can correct the violations referenced in the December letter. Finally, there is a copy of a letter dated 20 January 1966, again addressed to the County, stating that past inspections "revealed numerous deficiencies and violations by your concessionaires in the

---

1. The Government properly assumed the burden on this issue. *See, e. g.*, Rideman v. Barkwill (1934) 139 Cal.App. 564, 567, 34 P.2d 744, 746.

operation of their facilities at Russian River Reservoir," that "previous deficiencies had not been corrected," that "there were continued violations of State and Federal laws and regulations," and therefore there would be a recommendation to the Secretary of the Army to terminate the license. The "numerous deficiencies," "previous deficiencies," and "continued violations" were not further spelled out, nor can they be related to that part of the contract found in the record. Lastly, there is a copy of a form of revocation notice reciting that the master license has been revoked at the direction of the Assistant Secretary of the Army. No reasons are specified.

Nothing in the documents filed purports to impose any contractual duty on the County to develop any specific facilities or to provide any specific services. A recitation in a notice of intention to terminate a license that the County is in violation of the terms of a license is not itself proof that any such terms existed. We can guess that when the letter of 4 December mentions "the development plan," the writer may have had in mind the "Master Plan" that was incorporated into the license with the County, and we can also guess that if the "Master Plan" had been offered, it would have contained some covenants or conditions that could be construed to impose the duties the Government claims were not fulfilled. But speculation of that kind is no substitute for proof adequate to sustain a finding that such contractual obligations existed and that the County breached them in material particulars. There is no evidence in the record from which a conclusion could follow that the County was in violation of some requirements of State law justifying termination.

A summary judgment is neither a method of avoiding the necessity for proving one's case nor a clever procedural gambit whereby a claimant can shift to his adversary his burden of proof on one or more issues. (Adickes v. S. H. Kress & Co. (1969) 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed. 142.) To obtain a judgment in favor of a claimant pursuant to his complaint, counterclaim, or cross-claim, the moving party must offer evidence sufficient to support a finding upon every element of his claim for relief, except those elements admitted by his adversary in his pleadings, or by stipulation, or otherwise during the course of pretrial. A plaintiff seeking summary judgment who has failed to produce such evidence on one or more essential elements of his cause of action is no more "entitled to a judgment" (Rule 56(c) Fed.R.Civ.Proc.) than is a plaintiff who has fully tried his case and who has neglected to offer evidence, sufficient to support a finding on a material issue upon which he bears the burden of proof. (*See* 6 J. Moore, Federal Practice (2d ed. 1966) [hereinafter cited as Moore] ¶ 56.22[2], at 2825.) In either situation there is a failure of proof.

Thus far we have ignored the other deficiencies in the Government's moving papers. Those papers did not comply with Rule 56(e), and summary judgment should not have been predicated on them. (Automatic Radio Mfg. Co. v. Hazeltine Research, Inc. (1950) 339 U.S. 827, 831, 70 S.Ct. 894, 94 L.Ed. 1312; Union Ins. Soc'y of Canton, Ltd. v. William Gluckin & Co. (2d Cir. 1965) 353 F.2d 946, 952–953; F. S. Bowen Elec. Co. v. J. D. Hedin Const. Co. (1963) 114 U.S.App.D.C. 361, 316 F.2d 362; Washington v. Maricopa County (9th Cir. 1944) 143 F.2d 871, cert. denied (1946) 327 U.S. 799, 66 S.Ct. 900, 90 L.Ed. 1024.)[2] Rule 56(e) requires that affidavits "shall be made on per-

2. *See also* Paramount Pest Control Serv. v. United States (9th Cir. 1962) 304 F.2d 115, 116–117: "Rule 56(e) * * * permits the use of affidavits in support of or in opposition to a motion for summary judgment, but also requires that the facts stated in them be admissible in evidence upon a trial. Obviously then, it was incumbent upon the court to determine whether the proffered proof would be admissible in evidence, and if it clearly infringed upon the parol evidence rule then there was no alternative save to reject it."

sonal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that that affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers * * * referred to in an affidavit shall be attached thereto or served therewith."

Mr. Watkins' affidavit was not made on personal knowledge; it did not set forth facts as would be admissible in evidence; and it did not show that Mr. Watkins was competent to testify to the matters stated therein.

The exhibits annexed to Mr. Watkins' affidavit are copies of intradepartmental memoranda, copies of copies of letters addressed to third persons by third persons, and copies of documents styled revocation notices addressed to third persons by third persons. None of the documents was authenticated, and all of them were hearsay.

■ A writing is not authenticated simply by attaching it to an affidavit, even if the writing appears on its face to have originated from some governmental agency and the affiant is a government official. The foundation is laid for receiving a document in evidence by the testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document and, where appropriate, its delivery. An official record is authenticated by the testimony of a witness who knows and attests to the facts stated in Rule 44 of the Federal Rules of Civil Procedure. (See, e. g., 5 Moore ¶ 44; C. McMormick, Handbook of the Law of Evidence (1954) 395–405.)

Mr. Watkins' affidavit did not lay the foundation for the receipt of the exhibits on any theory. His affidavit consists of a series of legal conclusions unsupported by facts. He says, for example, that the master license with the County "was duly executed" by the County and the Army on June 12, 1959, and a "true copy" is attached. He did not sign the exhibit, and he states no facts at all from which we could conclude that he could identify the signatures of those who did; he tells us nothing to show how he knows the document to be a correct copy of a genuine contract. The fact that the affiant is employed by the Army and that the document was supposedly signed by somebody who is also in the Army is patently insufficient to provide him with the necessary personal knowledge to authenticate it. None of the remaining exhibits is better identified.

■ All of the exhibits were hearsay as to Dibble. None of the documents relating to the claimed breach of the master lease would have been admitted over objection at the time of trial. But had the case been tried, it is very doubtful that counsel would have attempted to use a notice of termination to prove a breach. Nor would he have attempted to offer the exhibits in evidence anteceded by the oral testimony of a witness to the same effect as the recitals of Mr. Watkins' affidavit. Because lawyers so often present inadmissible testimony (including their own), in the form of affidavits that they would not consider presenting from a witness stand, should we assume that the belief is common that the rules of evidence vanish when a witness testifies by affidavit rather than from the stand? Testimony presented by affidavit is different from testimony orally delivered, because the affiant is not subject to cross-examination. But that fact leads to greater, not lesser, strictures imposed on the testimony presented by affidavit. (E. g., see Rule 56(e) Fed.R.Civ. Proc.; DePinto v. Provident Security Life Ins. Co. (9th Cir.) 374 F.2d 50, cert. denied (1967) 389 U.S. 822, 88 S. Ct. 48, 19 L.Ed.2d 74; Doza v. American Nat'l Ins. Co. (8th Cir. 1963) 314 F.2d 230; 6 Moore ¶ 56.22.)

Because the judgment must be reversed in any event, we decline to comment upon the district court's resolution of Dibble's estoppel defense.

The judgment is reversed.

EUGENE A. WRIGHT, Circuit Judge (concurring):

I concur in the judgment on the understanding that nothing in Judge Hufstedler's able opinion disturbs the well-settled rule that affidavits not in compliance with Rule 56(e) may be considered by the trial court in the absence of an objection by counsel. Noblett v. General Electric Corp., 400 F.2d 442 (10th Cir. 1968); Auto Drive-Away Co. of Hialeah, Inc. v. Interstate Commerce Comm'n, 360 F.2d 446 (5th Cir. 1966); United States for the use and Benefit of Austin v. Western Electric Co., 337 F.2d 568 (9th Cir. 1964); Klingman v. National Indemnity Co., 317 F.2d 850 (7th Cir. 1963); Mitchell v. Dooley Bros., 286 F.2d 40 (1st Cir. 1960); 6 J. Moore, Federal Practice ¶ 56.22[1] at 2817–18 (2d Ed. 1966); 3 W. Barron & A. Holtzoff, Federal Practice § 1237 at 171–72 (Wright ed. 1958).

Inadmissible affidavits are no different from inadmissible evidence. They may be stricken in the discretion of the trial judge, but will support a judgment if he elects to consider them and no objection is made.