JAMESON, District Judge:
 

 The Wolf Corporation (Wolf) appeals from summary judgment in favor of Lockwood (Trustee), the successor trustee in bankruptcy of Emerald Properties, Inc. (Emerald), enforcing a settlement agreement between Wolf and Emerald made in connection with bankruptcy proceedings. The district court also held that Wolf’s counterclaim against the bankrupt estate was barred by the statue of limitations as well as by the terms of the settlement agreement. We affirm.
 

 I.
 
 Factual Background
 

 Emerald was indebted to Wolf, a realty investment corporation, for $705,000. Albert N. Ballard owed $200,000 to Emerald. To satisfy the debt, Ballard transferred his interests in stock of Westpoint Holding Pty., Ltd. and Australian real property to Lawrence E. McCombs, an officer of Emerald. McCombs assumed Ballard’s obligations with respect to the real property. McCombs in turn gave a note for $392,051, plus 7% interest, to Emerald to satisfy Ballard’s obligation. The note was due December 31,1971, or on demand, and was secured by McCombs’ interest (acquired from Ballard) in the Westpoint stock and the Australian real estate.
 

 On January 7,1972 Emerald assigned the McCombs note to Wolf in “partial satisfaction and discharge” of its $705,000 debt. McCombs separately assigned all of his interest in the Westpoint stock and Australian real property to Wolf, subject to underlying security interests. Emerald filed a voluntary bankruptcy petition on March 14, 1972. Since Emerald had assigned the McCombs note to Wolf in partial satisfaction of an antecedent debt within four months of bankruptcy filing, the Trustee prepared to file a preference claim, under 11 U.S.C. § 547(b),
 
 [1]
 
 for the amount of the principal and interest on the note. Wolf denied receiving any preference and denied any liability to the Trustee.
 

 Negotiations ensued between the Trustee and Joseph Wolf, the president of Wolf, to settle the preference claim. Attorneys for Wolf participated in the negotiations. Wolf needed the testimony of the Trustee’s attorney, Jerome Shulkin, in Australian litigation over competing claims to the Australian property. The outstanding obligations and money expended by Wolf on the property were approximately $2,250,000. Shul-kin agreed to testify in Australia in exchange for certain terms in the settlement agreement. The essential terms agreed upon and subsequently approved by the bankruptcy were:
 

 (1) Wolf “acknowledge[d] an indebtedness to the Trustee in the amount of $392,051 plus interest . . . . The parties contemplate that the indebtedness will be paid in full from proceeds of a pending sale of the [Australian real property].”
 

 (2) A division of the anticipated sale proceeds:
 

 (a) The first $25,000 to the Trustee;
 

 (b) The next $2,250,000 to Wolf;
 

 (c) The next $250,000 to the Trustee;
 

 (d) The next $125,000 to Wolf;
 

 (e) The next funds to the Trustee, up to the remaining amount of the claim for $392,051 plus interest.
 

 (3) Interest on the note would be abated from the date of approval of the settlement if the debt to the Trustee was paid within one year.
 

 (4) If the sale proceeds were insufficient to give the Trustee $100,000 according to the above schedule, then $100,000 would go to the Trustee before any money would go to Wolf.
 

 
 *607
 
 (5) Wolf would execute any necessary documents to perfect a lien for the bankruptcy estate on the property.
 

 (6) The Trustee agreed not to pursue the preference claim in court, and Wolf agreed not to file any claim against the bankruptcy estate.
 

 The agreement was made subject to the bankruptcy court’s approval. Joseph Wolf warranted his authority to bind the corporation, which was attested by the assistant secretary of the corporation in a certification attached to the settlement agreement and bearing the corporate seal. There was no formal resolution of Wolf’s board of directors to ratify the settlement agreement.
 

 A hearing was scheduled to approve the agreement. The Trustee notified Wolf of the time and place of the hearing, but the corporation did not send a representative. Other creditors of the estate were present, as were tax authorities. None objected to the agreement. Finding the settlement of the preference claim to be in the best interest of the bankruptcy estate, the bankruptcy court on November 14, 1973 approved the agreement, authorized the Trustee “to enter into that certain settlement” and ordered “that the trustee shall cause such steps as may be necessary to protect the interests of the trustee pursuant to the said settlement agreement in the form of documentation and/or security interests in and to certain properties or interests in properties in Australia as provided for in said settlement agreement.”
 

 In accordance with the terms of the settlement, the Trustee did not press the preference claim and Wolf did not file a creditor’s claim against the estate. Shulkin and Joseph Wolf went to Australia, where Shul-kin testified on behalf of Wolf, and they both told the Australian court that they had entered into the settlement agreement. Since then, Wolf has failed to execute any security instruments to protect the Trustee’s interests under the agreement. To date the Australian property has not been sold; nor has Wolf paid the Trustee any part of the debt. In March, 1976, the Trustee brought this action to enforce the agreement and recover the amount of the “acknowledged debt.” Wolf in its answer to the Trustee’s complaint denied the existence of a valid debt, disavowed Joseph Wolf’s authority to bind the corporation, asserted that the debt, if any, was contingent upon sale of the Australian property, and pleaded a counterclaim to recover a proportionate part of an alleged $2,000,000 debt owed by Emerald to Wolf.
 

 The Trustee moved for summary judgment for the amount of the note and for dismissal of Wolf’s counterclaim. He contended that interpretation of the settlement agreement was a question of law proper for summary judgment, and that the counterclaim was barred because it was not filed within six months as prescribed by Bankruptcy Rule 302(e), and the terms of the settlement agreement estopped Wolf from asserting the counterclaim. Wolf did not respond to the Trustee’s argument regarding the counterclaim. Wolf agreed, however, that no genuine issue of material fact existed and asked for summary dismissal of the Trustee’s complaint. Wolf primarily argued that Joseph Wolf lacked authority to sign the agreement, that the agreement was still executory, therefore unenforceable, and that any obligation of Wolf under the agreement was conditioned upon the sale of the Australian property. The district court agreed with the Trustee’s interpretation of the agreement and granted summary judgment. In its order the court also noted that Wolf’s counterclaim was barred both by the terms of the agreement and § 57 of the Bankruptcy Act, 11 U.S.C. § 93(n).
 

 On appeal Wolf challenges the propriety of summary judgment, contending that triable issues exist as to the meaning of the agreement. The corporation reasserts its contentions that Joseph Wolf had no authority to bind the corporation, that the agreement is unenforceable, and that in any case the trial court misconstrued its terms. Wolf contends also that the district court’s judgment resolves less than all of the claims in this action without the certifica
 
 *608
 
 tion required by Fed.R.Civ.P. 54(b), thus depriving this court of jurisdiction to hear this appeal.
 

 II.
 
 Jurisdiction
 

 Fed.R.Civ.P. 54(b) provides that a judgment on fewer than all of the claims in an action, including counterclaims, does not terminate the action as to any of the parties unless the court expressly determines that there is no just reason for delaying an appeal and expressly directs that final judgment be entered. The district court made no such determination, so if the summary judgment adjudicated fewer than all the claims the judgment would not be appealable.
 
 United California Bank v. Fade1,
 
 482 F.2d 274, 276 (9 Cir. 1973). We conclude, however, that “as a practical matter, the district court’s order was a final judgment and that, accordingly, we may entertain jurisdiction of this appeal.”
 
 Riggle v. State of California,
 
 577 F.2d 579, 581 n. A (9 Cir. 1978).
 

 In its order granting summary judgment, the district court stated that Wolf’s counterclaim was barred by the statute of limitations and the terms of the settlement agreement. The judgment entered on that order did not mention the counterclaim. Although the order is not the same as a judgment entered on the decision, see 6 Moore’s Fed. Practice ¶ 54.02, at 105 (2d ed. 1976), the determination of the court is clear. The district court obviously was not trying to adjudicate fewer than all the pleaded claims. The technical variance between the judgment and order in this case should not preclude our exercising jurisdiction.
 
 [2]
 
 See
 
 Wescott v. Impresas Armadoras, S.A. Panama,
 
 564 F.2d 875, 881 (9 Cir. 1977).
 
 [3]
 
 As the court noted in
 
 General Time Corporation
 
 v.
 
 Padua Alarm Systems, Inc.,
 
 199 F.2d 351 (2 Cir. 1952),
 
 cert. denied,
 
 345 U.S. 917, 73 S.Ct. 728, 97 L.Ed. 1351 (1953),
 

 The final judgment rule . . . has many merits in preventing appeals on form and procedure and in limiting review to the merits. It should not be pressed to the point where it itself becomes an instrument of technicality, preventing review of matters which the parties and the judge thought-with entire propriety-had been authoritatively disposed of.
 

 Id.
 
 at 359. To dismiss this appeal would in effect subvert the purposes of Rule 54(b).
 
 [4]
 

 III.
 
 Authority to Bind the Corporation
 

 While the evidence is insufficient to establish Joseph Wolf’s actual authority to bind the corporation, we agree with the district court that Wolf is bound by the settlement agreement under the doctrines of apparent authority and implied ratification.
 

 It is well settled that a corporation may be bound by an agreement of its agent “if within the apparent scope of the agent’s authority, although the contract may be beyond the scope of his actual authority.” Apparent authority, however, “can be inferred only from acts and conduct of the principal,” and the person relying on apparent authority must have exercised “ordinary prudence” and acted “in good faith and conversant with business prac
 
 *609
 
 tices.”
 
 Lamb v. General Associates, Inc.,
 
 60 Wash.2d 623, 374 P.2d 677, 680 (1962). Here the Trustee asked for and received assurance from a corporate officer other than Joseph Wolf of the president’s authority. While the secretary’s certificate does not prove actual authority, it is relevant to the issue of the reasonableness of the Trustee’s conduct. Wolf’s attorneys participated in the settlement. A separate settlement between Wolf and Ballard was signed by Joseph Wolf on behalf of the corporation. Even though Wolf is a public corporation with more than 1500 shareholders, it appears that it often conducted business through its president. Wolf’s directors were aware of the settlement negotiations and permitted Joseph Wolf to hold himself out as having authority to settle the preference claim. Cf.
 
 Barnes v. Treece,
 
 15 Wash.App. 437, 549 P.2d 1152, 1156 (1976). Viewing the transaction as a whole, the corporation’s conduct was sufficient to mislead a reasonable person to rely on the apparent authority of Joseph Wolf.
 
 Id.
 

 Wolf’s subsequent actions impliedly ratified the settlement.
 
 Barnes, supra,
 
 contains a thorough discussion of the doctrine of implied ratification. “The basic inquiry ... is whether the facts demonstrate an intent to affirm, to approve, and to act in furtherance of the contract.”
 
 Id.
 
 549 P.2d at 1157. Implied ratification can be by affirmative acts or by omission to act, but ratification by silence or acquiescence requires knowledge, and acceptance of the benefits from the contract or prejudicial reliance by the other party.
 
 Id.
 
 at 1157. Wolf knew of the settlement agreement, both through its attorneys who negotiated its terms and through notice from the trustee of the hearing to approve the settlement. Wolf did not disavow the agreement until this action was brought by the Trustee. Pursuant to the agreement, the corporation did not file a creditor’s claim against the estate. Wolf accepted the benefits of the performance by the Trustee and his attorney, who travelled to Australia to assist with Wolf’s litigation. The Trustee relied on the agreement to his detriment in not pursuing the preference claim, which would have hindered Wolf’s efforts to establish its claim to the property. Wolf’s attorneys, in response to the Trustee’s demands for security documents, repeatedly promised but failed to produce the documents. Wolf argues that the refusal to execute security instruments constitutes an unequivocal act of repudiation of the agreement, but we do not agree. The corporation knowingly accepted the benefits of the contract. Its conduct evinces the intention to adopt and recognize the contract as binding.
 
 Barnes, supra
 
 at 1157.
 

 Whether apparent authority exists or implied ratification has occurred is usually a question for the finder of fact. Fed.R.Civ.P. 56(e), however, requires a party opposing a motion for summary judgment to set forth specific facts showing that there is a genuine issue for trial. Wolf in its memorandum and affidavit in opposition to the Trustee’s motion for summary judgment did not controvert the facts alleged by the Trustee in support of implied ratification and apparent authority. The corporation alleged only that Joseph Wolf lacked actual authority, and merely stated legal conclusions without citation of authority that apparent authority and implied ratification could not apply to this case. Wolf cannot rest on the mere allegations or denials of his pleadings. Fed.R.Civ.P. 56(e). Under the circumstances, summary judgment was proper.
 

 IV.
 
 Interpretation of the Agreement
 

 Wolf contends that it did not agree unconditionally to pay the Trustee the amount of the note, but instead the agreement established a joint venture, with Wolf and the Trustee as co-lienors who would share in the liquidation proceeds of the Australian real property and stock. The terms of the agreement as a whole belie, the interpretation urged by Wolf.
 

 Wolf’s acknowledgment of “an indebtedness to the Trustee” establishes Wolf’s obligation to pay the Trustee. Wolf’s assertion that “an indebtedness” refers to the original obligation of McCombs to the Trustee
 
 *610
 
 defies logic. No purpose would be served by Wolf acknowledging a debt between two other parties. The next sentence of the agreement confirms Wolf’s undertaking. “The parties contemplate that the indebtedness to the Trustee will be paid in full from proceeds of a pending sale” of Wolf’s property. Wolf’s claim that the agreement re-vested the note in the Trustee is not borne out by the rest of the agreement. If the Trustee owned the note, the provisions for security documents would be superfluous because the note was already secured by the Australian property. Moreover, Joseph Wolf’s express purpose in entering the agreement was to “buy peace” from the preference claim and obtain the Trustee’s help in Wolf’s litigation in Australia. Any claim of the Trustee to the property would have hindered Wolf’s efforts to confirm its claim.
 

 Wolf also argues that the contemplated division of sale proceeds established the sale of the property as a condition precedent to Wolf’s obligation to pay. The provision could have been drafted more clearly, but courts have consistently disfavored conditions precedent, and have not construed stipulations as conditions unless required to do so by unambiguous language. See, e.
 
 g., United States v. Schaeffer,
 
 319 F.2d 907, 911 (9 Cir.),
 
 cert. denied,
 
 376 U.S. 943, 84 S.Ct. 798, 11 L.Ed.2d 767 (1963);
 
 Prager’s, Inc. v. Bullitt Co.,
 
 1 Wash.App. 575, 463 P.2d 217, 222 (1969);
 
 Ross v. Harding,
 
 64 Wash.2d 231, 391 P.2d 526, 531 (1964). Courts are especially loath to find a condition precedent when the alleged condition is peculiarly within the control of one of the contracting parties. See
 
 Home Savings Association v. Tappan Co.,
 
 403 F.2d 201, 203 (5 Cir. 1968). The disputed contract in
 
 Home Savings
 
 contained a promise to disburse funds “on closing” of a loan. The court found that the term “on closing” merely prescribed the time for payment, and that closing was not a condition precedent to the obligation to pay. The present case presents a similar question. The “contemplation” of payment from a specific source does not unambiguously establish sale as a condition precedent, especially since Wolf can control the occurrence or non-occurrence of that event. Similarly, in
 
 Noord
 
 v.
 
 Downs,
 
 51 Wash.2d 611, 320 P.2d 632 (1958), the court found ambiguous the terms of a note “payable on approval” of a loan. Other documents increased the ambiguity. Nonetheless, the court concluded that an unconditional liability was intended.
 

 Wolf questions the propriety of summary judgment, in light of the ambiguity in the language of the agreement. We note again, however, that Wolf did not raise a factual controversy on its affidavit opposing summary judgment, but merely stated legal arguments and conclusions. In the absence of a factual dispute, resolution of ambiguity is a question of law for the court and summary judgment was proper.
 
 Murray v. Western Pacific Insurance Co., 2
 
 Wash.App. 985, 472 P.2d 611, 616 (1970).
 

 Construing the settlement agreement in light of its purpose and conduct of the parties, see
 
 Prager’s, supra
 
 463 P.2d at 221, we agree with appellee’s interpretation. First, the success of the Trustee’s preference claim was a certainty. Wolf admitted that the McCombs note was taken in partial satisfaction of an antecedent debt within four months of the bankruptcy filing. The Trustee had nothing to gain by agreeing to a conditional liability, especially if Wolf could control the occurrence of the condition. Second, the contemplated division of sale proceeds is consistent with the Trustee’s objectives. By relinquishing his claim to the note, Wolf’s litigation would be expedited, and the Trustee was assured a fund from which Wolf’s obligation would be paid. The provision for abatement of interest was apparently intended to encourage an early sale.
 

 This interpretation of the agreement is also consistent with Wolf’s objectives. Wolf’s president expressly stated in his affidavit that he “was precipitated into the agreement under a notion (which proved erroneous) that Shulkin’s testimony at an Australian trial was indispensable to a favorable result . . . . ” He further laments that he “unwisely bargained away a claim
 
 *611
 
 against [the] estate” for what turned out to be a “white elephant.” Joseph Wolf tried to persuade the board of directors to approve the agreement which he believed would “yield a lucrative return which would mitigate the financial disaster that [he] had evoked in [entering] into the Emerald Properties venture.” He believed he had “acted prudently in ‘buying peace’ from the preference claim.” All of these statements substantiate the Trustee’s version of the transaction. The corporation has had the benefit of the contract, and now wants to deny its binding effect because it did not turn out as lucrative as anticipated. We find that the settlement agreement creates an unconditional obligation on Wolf to pay the Trustee. The parties anticipated payment at the time the sale was consummated. Since that event has not occurred, payment must be made within a reasonable time.
 
 Noord v. Downs,
 
 51 Wash.2d 611, 320 P.2d 632, 634 (1958). Seven years is longer than a reasonable time, so Wolf’s payment is overdue.
 

 V.
 
 Sufficiency of Affidavit
 

 Wolf alleges that the affidavit of the Trustee’s attorney in support of the motion for summary judgment did not meet the requirement of Fed.R.Civ.P. 56(e) that an affidavit “be made on personal knowledge, . . . and shall show affirmatively that the affiant is competent to testify to the matters stated therein.” Wolf argues that only the Trustee could testify whether payment was received. The party moving for summary judgment must offer evidence sufficient to support a finding upon every element of his claim for relief, except those elements admitted by his adversary.
 
 United States v. Dibble,
 
 429 F.2d 598, 601 (9 Cir. 1970). Even assuming that the Trustee’s attorney was not competent to testify whether payment was received, Wolf’s failure to deny the allegation in its answer to the Trustee’s complaint constitutes an admission. Fed.R.Civ.P. 8(d). Therefore, no evidence on this element was required.
 
 Dibble, supra.
 
 Moreover, the attorney negotiated the settlement and handled all the related transactions. It is reasonable to assume that he had personal knowledge of nonpayment. An attorney can submit an affidavit when he is competent to testify to facts within his personal knowledge. 6 Moore’s Federal Practice ¶ 56.22[1] (2d ed. 1980).
 

 We find no merit in Wolf’s remaining contentions. The summary judgment in favor of the Trustee is affirmed.
 

 [1]
 

 . The Bankruptcy Code was substantially amended in 1978. The preference period under current law is 90 days, rather than four months.
 

 [2]
 

 .Fed.R.Civ.P. 58 requires that a judgment be written on a separate document from an order or decision. The actual commitment of the judgment to writing, however, as well as the filing, entry, and recordation of the judgment, are ministerial acts performed by the court clerk, as distinguished from the judicial act of rendering judgment, which is the statement of the substance of the court’s decision by the judge. 6 Moore’s Fed. Practice 1! 54.02 at 104-05 (2d ed. 1976). The clerk’s failure to mention the counterclaim in the judgment cannot alter the substance of the court’s decision.
 

 [3]
 

 . In
 
 Wescott
 
 the court recognized an exception to the final judgment rule where an issue raised in a counterclaim involved purely a question of law. The application of the statute of limitations in this case is purely a question of law, and it would be pointless to send the case back to the district court to correct what was apparently an inadvertent omission in the judgment.
 

 [4]
 

 . Moreover, while a counterclaim was pleaded, Wolf did not argue the claim before the district court, nor set forth any facts in its affidavit to support the claim. In fact, the counterclaim was not mentioned again until it was raised as a technical point of procedure on this appeal.